[File No. 6588.]

JOHN BERGSTRAND, Respondent, v. NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Appellant.

(287 N. W. 631.)

448

Opinion filed July 17, 1939.   Rehearing denied October 11, 1939.

*Alvin C. Slrutz,* Attorney General, and *Milton K. Higgins* and *A. M. Kuhfeld,* Assistant Attorneys General, for appellant.

*E. C. Boostrom,* for respondent.

NUESSLE, Ch. J. McVille is an incorporated village situated in Nelson county, North Dakota. On July 28, 1935, and for a long time prior thereto, the plaintiff John Bergstrand was its duly elected and qualified marshal. He was also the village pumpman and night watchman. As pumpman he received a salary of fifty dollars per month. It appears that in August, 1929, at a meeting of the village board of trustees, a resolution was passed employing him as night watchman. This employment was to continue through the summer and fall months. Each year thereafter, beginning about the middle of the summer and continuing through two or three or more months, Bergstrand assumed

and performed his duties as watchman. He patrolled the village streets at night, kept order, and looked after the safety of the business places. His hours were from 11 o'clock in the evening until 5 o'clock in the morning. He received no salary as marshal. His only compensation for the performance of the duties of that office were such fees as he received for the service of papers. For his compensation as night watchman he was to get $12.50 per week during the time he was thus employed, and when the village budgets were made up an item was included to cover this salary. Times were hard, however, and the village was unable to raise sufficient funds by taxation to take care of all the budget items, and so Bergstrand, though thus employed as night watchman, was told he would have to solicit the business men of the village for funds with which to pay for his services in that capacity. The village at one time or another paid small sums on account thereof, but much the greater part of his pay was made up from contributions thus solicited. These contributions were never paid into the village treasury, nor did they pass through the hands of the village board but were paid directly to Bergstrand. Early in the morning of July 28, 1935, while Bergstrand was on duty as watchman, an altercation took place on the village streets. Bergstrand attempted to quiet the disturbance. While thus engaged he was hit on the head with a bottle and felled to the sidewalk his head striking the curb, and his skull was fractured. As a result of this injury he was partially paralyzed and thereafter was wholly incapacitated to continue his previous employment. He was taken to the hospital where he remained for some time. The doctor whose patient he was, filed a claim with the appellant compensation bureau, setting forth the fact of his injury and making claim for compensation. In the claim thus presented Bergstrand was denominated "marshal." The compensation bureau considered the claim and in November, 1935, denied the same on the ground that the village marshal was an elective officer and, therefore, injuries received in performing the duties of that office were not compensable.

The village annually made its reports to the compensation bureau, listed its marshal as one of its employes receiving compensation, and paid premiums on account thereof. The compensation bureau's settlement sheets included policemen and detectives under its classification

number, 7720, but on these sheets the marshal was the only employee listed under this classification by the village. The settlement sheet statements, however, during the several years, showed sometimes $100 and sometimes $200 as the actual payroll under classification number 7720, and for the year beginning "8–26–33" and ending "8–26–34" the payroll under number 7720 was stated as $100, and the same amount was stated under this classification on the settlement sheet for the period beginning "8–26–34" and ending "8–26–35." These payments were taken into account in reckoning the premiums charged against the village by the bureau. With respect to the arrangement between the village and Bergstrand, one of the village board members testified in answer to questions by the court: "The village board told Mr. Bergstrand when they hired him that he could go around and get the money from the business men, they would give him the trouble of collecting it in place of the village. There was no arrangement made between the business men and the village with respect to this payment of Bergstrand's salary. It was just an understanding between them that it was to be done that way. The only action taken by the board was that they hired him, and then they told him—I don't think it was in the minutes, but they told him that they hired him and if the business men were willing to help pay the salary he could see them and collect it from them himself. Mr. Bergstrand took his orders from the village board. The reports to the compensation bureau covering the years 1934, 1935 and 1936 showed a disbursement to Mr. Bergstrand under the title of marshal but really as a night watchman. The disbursement was not made by the village through its treasury, but we reported that because we listed him and wanted him insured and we figured we would pay the premium on the money he had received and the village did pay the premium to the compensation bureau upon that basis as the money that he received from the business men. We short-circuited the salary of the night watchman directly to him rather than passing it around to the treasury, making a donation to the treasury. We figured it amounted to the same but we took the short cuts."

No appeal was taken from the bureau's action in November, 1935, denying compensation and dismissing the claim. But in February, 1936, and within one year after Bergstrand's injury, his physician, again purporting to act as his agent, wrote the bureau making claim

for compensation on account of the injury. In that behalf, he stated that Bergstrand's employment at the time of the injury was that of night watchman and that he was injured in the course of such employment. On the trial the bureau stipulated that this letter constituted an amendment of the original claim and further stipulated that upon this second application the bureau considered the matter anew and investigated the facts. This was the first investigation that was made. Thereafter on August 19, 1936, the bureau rejected the claim and Bergstrand was notified accordingly. The reason assigned for the rejection of the claim in November, 1935, was that Bergstrand was the village marshal and so an elective official. The reason assigned for the rejection by the resolution of August 19, 1936, was that on the facts ascertained after investigation by the bureau, Bergstrand was found to be the village marshal, an elective official. Thereafter, and on September 10, 1936, Bergstrand appealed to the district court from the order dated August 19, 1936. The case was then tried in the district court. The court found the facts to be substantially as stated above and held that the bureau's order of August, 1936, was a final action from which an appeal might be taken; that the appeal was timely; that Bergstrand was entitled to compensation as night watchman; that his disability was total and permanent; and awarded him compensation for this disability to be paid weekly during the rest of his lifetime. Thereupon the bureau perfected the instant appeal to this court.

The bureau here contends, first, that its final order disallowing compensation was made on November 21, 1935; that no appeal was taken therefrom until more than thirty days after notice of such order; that therefore the right to appeal was waived; further, that Bergstrand was the village marshal and that such duties as he performed were duties devolving upon him as such marshal; that he was thus an elective officer and, under the statute, was not, as such, entitled to compensation; that, in any event, the court erred in adjudging a total disability and requiring the weekly payment of compensation throughout the rest of Bergstrand's lifetime. The first two of these contentions were raised in the district court also and were there overruled.

Under § 17 of the Workmen's Compensation Act (Sess. Laws 1919, chap. 162), § 396a17, 1925 Supplement, an appeal from a decision of the Workmen's Compensation Bureau must be taken within thirty

days.  Hanson v. North Dakota Comp. Bureau, 56 N. D. 525, 218 N. W. 215.  Accordingly, if the order of the bureau under the date of August 19, 1936, was not a final decision the plaintiff was not entitled to be heard on this appeal.

It appears from the stipulations in the record that the letter written by Bergstrand's physician in February (and it should be borne in mind that Bergstrand was mentally as well as physically disabled on account of the injuries received by him) was treated by the bureau as constituting an amendment of the original claim.  In any event, upon receipt thereof the claim was considered anew and investigated accordingly.  Upon the facts then found by the bureau it was rejected.  The rejection of the claim on the first application for compensation was made without any investigation of the facts.  This was because upon the face thereof it appeared that Bergstrand was an elective official.  Accordingly there was no need for an investigation.  But upon receipt of the second application which recited that Bergstrand was, at the time of his injury, the village night watchman, the case had an altogether different aspect.  It was a wholly different case.  It was then an application made by one who purported to be a night watchman and who claimed compensation because of an injury received in the performance of his duties as such.  So the bureau in effect treated it as a new and original application, timely made, as in the exercise of its judgment it had a right to treat it even though made after the expiration of sixty days from the date of the injury.  See Pearce v. North Dakota Workmen's Comp. Bureau, 67 N. D. 512, 274 N. W. 587.  A hearing was had and the bureau found after examining into the facts that Bergstrand was injured while acting as village marshal.  This was the first time that any hearing was had in the matter.  The plain inference is that if the bureau on this investigation had found that the injury was received by Bergstrand as night watchman the claim would have been allowed if the village had complied in other respects with the requirements of the compensation act.  We must assume that this was so, otherwise there would have been no investigation, for to have had one would have been futile.  And this would have been in accord with the declared purpose of the act.  See Gotchy v. North Dakota Workmen's Comp. Bureau, 49 N. D. 915, 194 N. W. 663; Ethen v. North Dakota Workmen's Comp. Bureau, 62 N. D. 394, 244 N. W. 32;

Pearce v. North Dakota Comp. Bureau, 67 N. D. 512, 274 N. W. 587, supra. Accordingly we are of the opinion that the district court correctly held that the action of the bureau in rejecting the claim was a final action and that an appeal would lie therefrom.

This brings us then to the question as to whether the injuries received by Bergstrand were compensable. Chapter 310, Session Laws 1931, authorizes village boards to appoint night watchmen or policemen when deemed necessary, and to fix the compensation of such officers. It requires that any officer so appointed shall qualify by taking an oath of office and shall possess all the powers and perform all the duties now provided by law for village marshals. Such an officer is an employee within the meaning of that term as used in the compensation act. See Fahler v. Minot, 49 N. D. 960, 194 N. W. 695. The record discloses that the proceedings of the village board with respect to the employment of Bergstrand were pretty much informal. Nevertheless, it clearly appears that the board intended to and did employ Bergstrand as night watchman and, as such, imposed upon him duties over and beyond those that he might be expected to perform as village marshal; that the board fixed the compensation he was to receive; that he accepted the employment and qualified by taking the prescribed oath; that he entered into his employment as such night watchman and performed the duties thereof and that he was paid therefor. It is true that owing to the financial situation in which the village found itself the money wherewith to pay Bergstrand was not derived from taxation. This money came through voluntary subscriptions made by the citizens of the village in order to secure the services which Bergstrand performed. And Bergstrand was required to collect from the citizens the amounts that they thus subscribed to pay him. He did not turn the money into the village treasury and then receive it back again, but, as a member of the board testified, the board "short-circuited" it and let him collect and keep the sums thus subscribed. It further appears that in making up the statements required to be made to the compensation bureau the board set out the salary that was paid to Bergstrand. He was listed as an employee and the compensation paid to him was reported. This was reported as being paid to him as marshal. But this was merely a matter of statement and though the statement may not have recited the facts exactly as they were, nevertheless the amount

reported as being paid was taken into consideration by the bureau in fixing the premiums to be paid by the village. And it was clearly the intention of the board that such premiums should be paid to the end that Bergstrand might be insured. So we are of the opinion the trial court correctly held that Bergstrand was the village night watchman; that he received his injuries in the course of the performance of the duties of that employment; and that he is entitled to compensation therefor.

The defendant raises no question as to the amount of the weekly payments to be made to Bergstrand if he was entitled to compensation. Its only contention with respect to such payments is that the court erred in adjudging that they should be paid through the remainder of Bergstrand's life. We think there is merit to this contention. It is possible that there may be some amelioration of his condition. The total disability found by the court may not continue through Bergstrand's life, and though no complaint is made as to the amount of weekly compensation to be paid while his total disability continues, the judgment should be modified so as to provide that in case of a recovery or a partial recovery the amount of such payments may be changed. The bureau has a continuing jurisdiction, whether the award is made originally by it or on appeal by the court, and may modify the award as changing conditions require. Gotchy v. North Dakota Workmen's Comp. Bureau, 49 N. D. 915, 194 N. W. 663, supra; Crandall v. North Dakota Workmen's Comp. Bureau, 53 N. D. 636, 207 N. W. 551; Dahl v. North Dakota Workmen's Comp. Bureau, 63 N. D. 327, 248 N. W. 273.

Accordingly, the case will be remanded to the district court with directions that the judgment entered be modified consonant with this opinion, and subject to this modification it is affirmed.

BURKE, MORRIS, CHRISTIANSON, and BURR, JJ., concur.