GULBRANDSON, Respondent, v. TOWN OF MIDLAND et al, Appellants

(36 N. W.2d 655.)

(File No. 9036, 9037. Opinion filed March 28, 1949.)

**Blaine Simons** and **Tom Kirby,** both of Sioux Falls, for Appellants Town of Midland, South Dakota, and Western Surety Co.

**Howard B. Crandall** and **Robert N. Swark,** both of Sioux Falls, for Appellants Haakon County, South Dakota, and South Dakota Employers Protective Assn.

**Philip, Leedom & Driscoll,** of Rapid City, for Respondent.

SMITH, P. J. Haakon County and the town of Midland, located in that county, and their respective inusrance carriers have filed separate appeals from the judgment of the circuit court affirming an award of workmen's compensation to the widow and children of one James Gulbrandson. Mr. Gulbrandson, a private citizen, was killed September 19, 1946, while responding to the call of a peace officer for aid in attempting to arrest a pair of robbers. The commissioner fixed the compensation at $5,000 and made a separate award against each of the appellants and its respective carrier for $2,500 on the theory that while acting in his capacities as deputy sheriff of Haakon County and town marshal of Midland in attempting the described arrest, one Charles Schofield called Gulbrandson to his aid and thus placed the deceased in the service of both the county and the town. The county and the town each assert that the record fails to reveal a contract of employment between it and Gulbrandson, and they both assail the award as excessive.

The facts are not disputed. The county commissioners of Haakon County, by resolution, had authorized three deputy sheriffs to be compensated on a statutory fee basis, all as provided by SDC 12.1009. Pursuant to such authority an appointment in writing was delivered to Charles Schofield. Schofield appeared before a Notary Public and subscribed to the official oath endorsed on said appointment, but failed to complete his qualification by filing his appointment and oath in the office of the county auditor as required by SDC 12.1009. At the time of this appointment and during all of the times described herein Schofield was the duly appointed and qualified marshal of the town of Midland, in which capacity he was receiving a monthly salary. One Ratigan, who was the town marshal of Philip, was also appointed a fee deputy sheriff pursuant to the above described resolution.

Shortly after midnight on the 19th of September 1946 Ratigan was notified that two young men who had com-

mitted a robbery at Cottonwood were driving toward Philip. Ratigan's effort to take them into custody failed. Whereupon he called Midland in an attempt to reach Schofield. He talked with the deceased, James Gulbrandson, who was then operating the Midland switchboard, and asked him to contact Schofield and advise him of the approach of the robbers. Gulbrandson located Schofield by telephone at the hotel, delivered Ratigan's message, and inquired whether he needed help. Schofield answered in the affirmative. Thereupon Gulbrandson met Schofield at the hotel, and they drove to another part of the town in Gulbrandson's car and enlisted the help of one Mousseau who owned some rifles. Thereafter the three of them repaired to a bridge within the east edge of Midland. They placed the car across the bridge at an angle and took up their positions, Schofield and Mousseau at the west end of the bridge and Gulbrandson at the east end. Almost immediately the men they sought drove toward them from the west. The robbers, however, so maneuvered their car as to push the Gulbrandson car aside and drove on to the east. As they were passing shots were fired and after the event Gulbrandson was discovered mortally wounded. He died on the way to a hospital.

■ From the wording of the definition of the terms "employer" and "employee" found in SDC 64.0102, it follows that to sustain these awards, the record must reveal an express or an implied contract of employment which placed Gulbrandson in the service for pay of the county and town respectively. The statute contains these pertinent provisions:

"(1) 'Employer', shall include the state and any municipol corporation within the state or any political subdivision of this state * * * using the service of another for pay. * * *

"(2) 'Employee', every person, * * * in the services of another under any contract of employment, express or implied, * * * except: * * *

"(b) Any official of the state or of any county, municipality, * * * therein, elected or appointed for a regular term of office * * * but deputy sheriffs, constables, marshals,

policemen, and firemen shall be deemed employees within the meaning of this section; * * *."

The statutes clothe either a sheriff or a town marshal with authority to call a private citizen into the service of the county or town respectively. By SDC 12.1001 it is provided "The sheriff shall keep and preserve the peace within his county, for which purpose he is empowered to call to his aid such persons or power of his county as he may deem necessary. * * *" And by SDC 45.1112 it is provided "* * * and each town marshal shall possess, within the jurisdiction of the municipality, all the powers conferred by law upon sheriffs to suppress disorder and keep the peace."

■ We are of the opinion that when a private citizen is so impressed into service by a peace officer (cf. SDC 34.1618) a contract of employment results, and the county or town so employing a citizen becomes liable to him for the reasonable value of the service he renders by direction of such officer and therefore one who receives an injury which arises out of and in the course of such an employment is entitled to compensation as provided in the South Dakota Workmen's Compensation Law. Such' is the current of authority in other jurisdictions. County of Monterey v. Rader, 199 Cal. 221, 248 P. 912, 47 A. L. R. 359; Tomlinson v. Town of Norwood, 208 N. C. 716, 182 S. E. 659; Mitchell v. Industrial Commission of Ohio, 57 Ohio, App. 319, 13 N. E.2d 736; Millard County v. Industrial Commission, 62 Utah 46, 217 P. 974; Village of West Salem v. Industrial Commission of Wisconsin, 162 Wis. 57, 155 N. W. 929, L. R. A. 1918c, 1077; Vilas County v. Monk, 200 Wis. 451, 228 N. W. 591 and Balinovic v. Evening Star Newspaper Co., 72 App. D. C. 176, 113 F.2d 505.

In writing of the cases we have cited supra, in Eaton v. Bernalillo County, 46N. M. 318, 128 P.2d 738, 742, 142 A. L. R. 647, Mr. Justice Sadler said, "In each of the cases relied upon by appellee and cited, supra, the court was presented with facts affording jurisdiction to the sheriff, or his deputy, in impressing the service of a bystander in arresting, securing or conveying some dangerous character suspected of or charged with a violation of the criminal laws. Under such

circumstances, it was logical to hold that the person injured while so assisting occupied the status of a deputy sheriff, and, hence, of an employee, thereby entitling him or his dependents, to compensation." And again at a later point in that opinion in writing of the element of pay, it was said, "It all comes back to the question whether the services of decedent were commandeered. If so, then we may assume he would be entitled to the reasonable value of his services for the period employed, thus supplying the much discussed wage element."

We do not understand either of the appellants to seriously contend for a different holding. Each appellant seems ready to admit that the other is obligated to the widow and children of deceased for workmen's compensation, but points to facts and circumstances which it contends demonstrate that the commissioner erred in finding that Gulbrandson was impressed into its service.

 The county asserts that Schofield was not a deputy sheriff because he had failed to qualify by filing his appointment and oath in the office of county auditor. Such failure did not deprive him of de facto status. 43 Am. Jur. 235; Williamson v. Lake County et al., 17 S. D. 353, 96 N. W. 702. In our opinion, the public interest impels a holding that if the cirmumstances furnish an occasion for a de facto peace officer to call for aid, a private citizen is compelled to respond, and a valid contract for service results. In such an emergency a citizen is without opportunity to determine the authority of the officer calling for aid. And neither the officer nor the person is afforded an opportunity to exercise a choice in the matter. The employment is a product of emergent circumstances which have taken control of both the officer and the citizen. The considerations which have influenced a number of courts to hold that a de facto officer cannot make a de jure appointment are nonexistent in the record. Cf Von Nieda v. Bennett, 117 N. J. L. 231, 187 A. 629, 106 A. L. R. 1324.

 The county suggests the point that the offices of town marshal and deputy sheriff are incompatible. It is true that the duty to keep the peace is common to both

offices. But that fact, in our opinion, does not render the functions of these offices inconsistent or antagonistic and thus render them incompatible. 42 Am. Jur. 936; Peterson v. Culpepper, 72 Ark. 230, 79 S. W. 783, 2 Ann. Cas. 378.

■ Further, on the one hand the county points to the fact that Schofield was in the midst of his regular tour of duty as town marshal when he received word of the approach of the robbers, and that all of the events we have described happened within the limits of the town of Midland. On the other hand, the town points to the fact that as Schofield, Mousseau and Gulbrandson were leaving the Mousseau home. Schofield said in substance, and without formality, I am deputizing you, and Mousseau testified that Schofield employed the words "deputy sheriff" in deputizing them. In calling the named private citizens to his aid, Schofield was seeking needed help in the performance of a duty which was common to his office of town marshal and to his office of deputy sheriff. We think as a matter of law he was necessarily acting for both the county and the town and hence he called Gulbrandson into the service of the county and the town, under an implied contract rendering them jointly liable for the reasonable value of his services.

■ Under such a simultaneous employment by several employers, when injury results while the workman is acting for the common benefit of all, a joint award of compensation is proper. Page Engineering Co. v. Industrial Commission, 322 Ill. 60, 152 N. E. 483; Sargent v. A. B. Knowlson Co., 224 Mich. 686, 195 N. W. 810, 30 A. L. R. 993; Ocean Accident & Guarantee Corporation, Limited, v. United States Fidelity & Guaranty Co., 63 Ariz. 352, 162 P.2d 609; 71 C. J. 401, § 137.

As we have indicated, both employers and their respective carriers question the amount of the award.

The commissioner found "That the average weekly earnings during a fifty-two week period previous to September, 1946, being earned by a person in the same grade of employment as that which the said James Gulbrandson was then being employed by these employers, and at the same work, by the said Employers, was not less than $28.85 per week or

$125 per month or $1500 per year." In the circumstances revealed by the record under the then controlling statute, SDC 64.0402(1), as amended by Ch. 352, S. L. 1945, the widow and children were entitled to an award equal to four times the annual earnings of the employee, but not less in any event than $2,400, and not more in any event than $5,000. Hence, predicated on the foregoing finding of fact, the commissioner fixed the award at $5,000, and required each employer to pay one-half thereof.

The attack of the appellants on this award is twofold. They assert that the commissioner selected the wrong statutory guide in determining the "annual earnings" upon which the award is based, and that the finding we have quoted supra is without support in the evidence.

The basis for computing an award of compensation is fixed by SDC 64.0404. The pertinent provisions of that section read as follows:

"Basis of computation. The average weekly wages of an employee, and compensation payable, shall be ascertained as follows:

"(1) As to an employee in an employment in which it is the custom to operate throughout the working days of the year, the average weekly wages shall, where feasible, be computed:

"(a) As to an employee who was in the employment of the same employer in the same grade of employment as at the time of the accident continuously for fifty-two weeks next preceding the injury, except for any temporary loss of time, by dividing by fifty-two the total earnings of such employee as defined in section 64.0102(5), during such period of fifty-two weeks; but if such employee lost more than seven consecutive days during such period of fifty-two weeks, then the division shall be by the number of weeks and fractions thereof that he actually worked;

"(b) As to any other such employee, by computing the total of his earnings during the period he worked immediately preceding his injury at the same grade of employment for the employer by whom he was employed at the time of his injury, and dividing such total by the number

of weeks and fractions thereof that he actually worked, except that where such method of computation produces a result that is manifestly unfair and inequitable, or where by reason of the shortness of time during which the employee has been in such employment, or the casual nature or terms of the employment, it is impracticable to use such method, then regard shall be had to the average weekly amount which during fifty-two weeks previous to the injury was being earned by a person in the same grade, employed at the same work, by the same employer, or if there is no person so employed, by a person in the same grade, employed in the same class of employment in the same general locality;

"(2) As to an employee in an employment in which it is the custom to operate throughout the working days of the year and where the situation is such that it is not reasonably feasible to determine the average weekly wages in the manner provided in subdivision (1) of this section, such average weekly wages shall be determined by multiplying the employee's average days earnings by three hundred, and dividing by fifty-two;

"(3) As to employees in employments in which it is the custom to operate for a part of the whole number of working days in each year, by multiplying the employee's average days earnings by number of days which it is customary in such employment to operate during a year, but not less than two hundred, and dividing by fifty-two;

"(4) As to an employee who earns either no wage or less than the earnings of adult day laborers in the same line of employment in that locality, it shall be reckoned according to the average weekly wages of adults of the same class in the same or, if that is impracticable, then of neighboring employments".

The quoted finding indicates that the commissioner sought to apply the last portion of subsection (1) (b). The town insists that the employment in which Gulbrandson was engaged operated for only a part of the whole number of working days, and that subsection (3) should have been applied. The county, on the other hand, argues that subsection (4) is applicable, and that as against the county the

average earnings of Charles Schofield, or of Ratigan, as deputy sheriffs employed on a fee basis as authorized by SDC 12.1009, should control, thus resulting in a minimum death award.

The first inquiry in applying SDC 64.0404, supra, is whether the employment, that is the business or department thereof in which the workman was engaged at the time of his injury, was one "in which it is the custom to operate throughout the working days of the year". In the instant case that inquiry must receive an affirmative answer. At the time of the injury, Schofield and his aid, Gulbrandson, were engaged in law enforcement. While the county used some part time help on a fee basis in operating its law enforcement agency, both the county and town operated that phase of their activities throughout all of the days of the year with full time help, and their law enforcement officers were subject to constant call.

The employment being one in which it is the custom to operate throughout the working days of the year, the legislature has directed "where feasible" the average weekly wages shall be computed as provided in subsection (1). If it is not reasonably feasible to determine the average weekly wages in the manner provided in subsection (1) another method is provided by subsection (2). By possibility, if the circumstances are such that neither subsection (1) or (2) can be applied, the guide of subsection (4) may or can be employed.

It is patent, because Gulbrandson was employed for a particular task on a quantum meruit basis, and had only been at work less than an hour when he was injured, that neither subsection (1) (a), the first half of (1) (b) nor subsection (2) are applicable. The brief relation of employers and employee made proof of the elements or factors described in those sections impossible. Thus we are remitted to that portion of subsection (1) (b) that the commissioner employed as a guide in computing the award. It reads "or where by reason of the shortness of time during which the employee has been in such employment, or the casual nature or terms of the employment, it is imprac-

ticable to use such method, then regard shall be had to the average weekly amount which during fifty-two weeks previous to the injury was being earned by a person in the same grade, employed at the same work, by the same employer, or if there is no person so employed, by a person in the same grade, employed in the same class of employment in the same general locality".

 The commissioner found the average weekly earnings during a fifty-two week period previous to September 1946 earned by a person in the same grade of employment, employed by Gulbrandson's employers, and used that figure as a basis for his computation. In fact no other workman was concurrently employed on a full time basis by these employers. One of the employers used some deputies on a fee basis in the same character of work. Obviously, their earnings were not available as a standard or basis of computation because the wording of the statute clearly imports a legislative intention that the earnings of one who had been continuously occupied by his employment during a fifty-two week period should be employed as a standard. These deputies were but part time workers. However, the other employer used a full time marshal and paid him $85.00 per month, and we are told that his earnings fix the basis of a proper computation. If this marshal had actually been in the full time employ of both of Gulbrandson's employers as the statute seems to provide, we are of the opinion that, under the facts established by this record, to adopt the amount paid directly by the town to Schofield as a marshal's salary as a basis to compute compensation for Gulbrandson's dependents would be to follow the letter and ignore the intention revealed by the statute. Obviously the legislature turned to the amount normally earned by one in the same grade in the same employment as the injured workman as the basis which would be most fair and equitable to the parties. It would be unreasonable to conclude that it intended to force the use of earnings which the circumstances show to be abnormal and exceptional. In consideration of the identical services, the amount the town paid to Schofield was augmented to $135.00 per month by the merchants

of Midland. It is not difficult to perceive in this arrangement a method of providing an acceptable normal marshal's salary. Cf. Bergstrand v. North Dakota Workmen's Compensation Bureau, 69 N. D. 447, 287 N. W. 631.

 But Schofield was not in the concurrent full time employment of both Gulbrandson's employers and therefore, we think it would have been proper for the commissioner to have sought an external standard of earnings, viz., the earnings "by a person in the same grade, employed in the same class of employment in the same general locality". The record shows not only the basis on which Schofield was hired by the town and the merchants as marshal, but it also shows that Ratigan received $125.00 as marshal at Philip, the county seat. No conflicting evidence appears in the record. We are of the opinion that a marshal's earnings furnished a proper external standard under the statute, and hold that the commissioner did not err to the prejudice of the employers in fixing the average earnings on which his computation of an award is based.

Finding no prejudicial error in the record, the judgment of the circuit court is affirmed.

ROBERTS, RUDOLPH and SICKEL, JJ., concur.

HAYES, J., dissents.

HAYES, J. (dissenting). The principal applied by the majority and the nature of the views below stated may appear as sufficient to justify an expression of the reasons for my dissent.

Among others not differing in legal effect or altering their meaning and import, the industrial commissioner found as follows:

"II. That on the 19th day of September, 1946, James Gulbrandson was in the employment of both the employers above named, that is, the Town of Midland, South Dakota, and Haakon County, South Dakota, **in the capacity of a law enforcement officer, he having been legally deputized in such capacity for each of said employers.**"

"VIII. That the decedent, James Gulbrandson, was deputized as a law enforcement officer in behalf of both

said Employers during an emergency and in a time of stress, the employment by the employer, Haakon County, having resulted from the joint action of one Paul Ratigan and one Charles Schofield, both agents of said Haakon County and, at the time of such employment, both charged with the duty of enforcing the law for and on behalf of said Haakon County; **and the employment of the decedent as an enforcement officer for the Employer, the Town of Midland, having resulted from the action of the said Charles Schofield, who at the time of the employment, was also an agent of the employer, the Town of Midland, and charged with the duty of enforcing the law for and on behalf of said town.** That the decedent at the time of the said accident, and resulting death, was acting under authority conferred upon him by the said Paul Ratigan and said Charles Schofield. The two official capacities in which the said Charles Schofield was then functioning, that is, as a law enforcement officer for both Haakon County and the Town of Midland, were concurrent and indistinguishable at the time the said Schofield deputized the decedent." (Emphasis supplied.)

The emphasized parts of the findings quoted above form the basis for my departure from the opinion of the majority. Upon the quoted declarations the commissioner based the general conclusion that the marshal, Schofield, had authority to enlist the citizens of Midland to assist in law enforcement and to bind the town as an employer of such citizens. An award of $2500 as against the Town of Midland is affirmed by the judgment of the circuit court.

As appears from the opinion of the majority, Schofield was asked by an officer at Philip to apprehend two young men sought for a felony they had committed at Cottonwood and who thereafter had started eastward. Thereupon Schofield enlisted the aid of Gulbrandson and Mousseau and declared to them that he was deputizing them as deputy sheriffs. He did not ask assistance from Gulbrandson on behalf of the town of Midland. Without affixing any particular legal effect to the declaration of Schofield that he was appointing Gulbrandson as a deputy sheriff, we must nevertheless attach thereto the factual significance, i. e., that

Schofield enlisted the aid of Gulbrandson as an assistant to the sheriff and so stated.

It is my view that it was not a municipal function on the part of the Town of Midland to engage in the business of pursuing and capturing felons who escaped from Cottonwood or elsewhere. Support for this view is the specific declaration of duties of the sheriff as found in SDC 12.1001, to wit: "He (the sheriff) must pursue and apprehend all felons, * * *". By this provision I believe it was clearly intended to impose upon the sheriffs of the state the responsibility for the capture of fugitives from justice and, attendant with that responsibility, the incidental risks and liabilites. That other officers named in SDC 45.1112 are charged with the duty of preserving the peace is altogether plain. As I view the matter, however, there is a decided difference between the duty of keeping the peace in a given municipality and that of running down felons who are wanted because of crimes committed elsewhere. Such a distinction is recognized also by SDC 45.1133 which clothes all policemen with authority to pursue and arrest fugitives from justice. I think it is too obvious to admit of other contention that if a town marshal is about the business of trying to arrest a person whose custody is sought because of his criminal conduct at a place other than in the marshal's town such officer proceeds under permissive authority granted by said section 45.1133 and not under SDC 45.1112 vesting a town marshal with power "to suppress disorder and keep the peace". Nothing contained in SDC 45.1133 invites the belief that when a marshal or policeman attempts an exercise of the authority therein granted such officer is then on a mission for the town by which he is employed and being on such mission he may operate under SDC 45.1112 and summon aid which is not needed to preserve the peace of the town and thereafter use that aid in an attempt to capture a felon sought for a crime committed elsewhere.

For the peace and protection of the townspeople the marshal may command assistance in order to suppress lawlessness existing in his town. When a marshal pursues such

an endeavor some authorities uphold the allowance of a recovery by an assistant to him upon the theory and premise that those called to the aid of the marshal are carrying out a duty devolving upon such officer, and such assistants are therefore regarded as servants or employees of the town in performing one of its duties and governmental functions. I find no case, however, affixing to a municipality the character of an employer in an instance where a town officer seeks to exercise authority only as is allowed him under SDC 45.1133. My opinion is that the powers of a marshal, "within the jurisdiction of the municipality, * * * to suppress disorder and keep the peace", do not include authority to him to enlist the townsmen in the business of apprehending felons wanted for lawlessness committed elsewhere and thus impose upon a municipality the risks and liabilities incident to that kind of law enforcement. It is a matter of common knowledge, and as is reflected by the record in this case, that town marshals are not equipped for the business of pursuing and capturing felons. Simply that they "may" do so under SDC 45.1133 does not make it follow, as I view it, that the town is thus placed in that business and thereby rendered liable as an employer of those aiding in this special mission. I find nothing in the record in this case to support the view that Gulbrandson was pressed into service that he might aid the marshal in suppressing disorder or preserving the peace in Midland. There is no showing that affairs at Midland were other than altogether orderly and quiet as the officer looked to the west for the expected approach of the felons.

The opinion of this court in O'Rourke v. City of Sioux Falls, 4 S. D. 47, 54 N. W. 1044, 1045, 19 L. R. A. 789, 46 Am. St. Rep. 760, declares:

"There are two kinds of duties imposed upon a municipal corporation, in respect to which there is a clear distinction,—one is imposed for governmental purposes, and is discharged in the interest of the public, and the other arises from the grant of some special power, in the exercise of which the municipality acts as a legal individual. * * * In the enactment of ordinances, and in the appointment of officers

and agents for their enforcement, the municipality is exercising a governmental authority, and, within its limits, acts as the representative of the state, and **its officers are regarded as agents, not of the city corporation, but of the state.** Their powers and duties are derived from the law, and not from the city under which they hold their appointment." (Emphasis supplied.)

No subsequent decision of this court calls into question the former opinion. It seems to me not consistent to regard police officers as agents of the state in the discharge of governmental functions and to hold the municipality liable as an employer for losses incurred by such officers while acting as representatives of the state.

In 43 C. J., Municipal Corporations, § 1745, with a mass of decisions cited in support thereof, is the following:

"Futhermore, police officers can in no sense be regarded as servants or agents of the city. Their duties are of a public nature. Their appointment is devolved upon cities and towns by the legislature as a convenient mode of exercising a function of government; * * *".

Also in 37 Am. Jur., Municipal Corporations, § 224, it is stated:

"It is generally held that police officers of a municipality are not municipal officers, since their duties are of such a nature that they are agents of the state."

An extended review of cases bearing upon the question of liability for injuries or death resulting from services similar to those in which Gulbrandson was engaged is found in Eaton v. Bernalillo County, 46 N. W. 318, 128 P.2d 738, 142 A. L. R. 647, and in an annotation appearing in the volume last cited at page 657 thereof and prior annotations referred to therein. Many of these cases affirm the views of my colleagues in upholding an award against Haakon County. To impute to Gulbrandson, however, a dual role simply because he accompanied an officer who could assume to act either as deputy sheriff or town marshal, or both, in the Town of Midland, if and when the young robbers came along, and to impose upon the town the liability of an employer for the proposed mission are positions which, I believe, are not

sustained by the facts or the law applicable thereto. I think the facts of this case support the views that Gulbrandson was called upon to respond to the duty imposed upon him as a citizen of the state; that he assumed to assist a deputy sheriff, whose duty it was to capture the fugitives, and who, as a town marshal, was authorized, because he was an officer in the latter capacity also, by SDC 45.1133 to perform such a mission as a representative of the state rather than for the town and that the services of Gulbrandson were rendered in the interests of the general public and as an agent of the state.

In adopting the broad view that it is the business of the towns and the duty of their marshals to pursue and capture felons fleeing about the state we thereby enlarge the powers conferred by law upon municipalities, we increase the liabilities of such subdivisions, we divide the responsibility the law places upon the sheriffs and their aids, we require the municipalities and their police officers to provide the means and equipment to meet the resulting burdens and we pass along to the taxpayers of the towns the risks and expenses to be incurred in this kind of law enforcement. I think the authorities do not support such a ruling.

Resorting to the definitions of "employer" and "employee" under the workmen's compensation law we find that an employer is one "using the service of another for pay". SDC 64.0102(1). There is no showing in the instant case that the Town of Midland used the services of Gulbrandson for pay. If it is presumed that Gulbrandson was legally employed in work for the town it may then be assumed that such employment carried therewith an implied promise to pay for his services. I find, however, nothing upon which to predicate an implied contract of employment, the first presumption which must be made.

It seems reasonably clear also that we cannot ignore the exception stated in SDC 64.0102(2) (a) relating to one not employed in the usual course of business of the employer. Such a one is therein declared not to be an employee within the meaning of the workmen's compensation law. No showing before us even slightly suggests that it is the usual

course of business of the Town of Midland to engage in pursuing and capturing felons fleeing across the state and, of course, it is a reasonable assumption that there could be no such showing.

That certain peace officers specified in SDC 64.0102(2) (b), as amended by Ch. 313, S. L. 1943, are to be deemed employees within the meaning of that section carries therewith no implication of a legislative intent to place towns in the business of apprehending felons for offenses not committed within the jurisdiction of the municipality and thus affix to municipalities the character of employers in such an undertaking. Power to engage in such business is not by the laws of this state granted to municipalities. SDC 45.02.

In giving expression to my views it may not be regarded as altogether unfitting to add that the compensation to be awarded to the widow and minor children of Gulbrandson under the workmen's compensation law is in my opinion wholly inadequate and that, in the absence of other recourse for the losses suffered, and upon a finding that their husband and father met death in attempting to serve the interests of the people of this state, I believe that the state legislature should honor a claim in their behalf and allow to them such sum as by that body may be deemed reasonable and just.