RANSON-ROONEY v. OVERSEAS RAIL-
WAY, INC., ET AL.

———

(February 16, 1931. Opinion and Decree.)
(April 13, 1931. Rehearing Refused.)
(May 16, 1931. Writs of Certiorari and
Review Granted by Supreme Court.)
(August 1, 1931. Opinion and Decree in
Supreme Court.)

Lemle, Moreno & Lemle, Emile Pomes

and Charles J. McCabe, of New Orleans, attorneys for plaintiff, appellant.

Andrew R. Martinez and Gordon Boswell, of New Orleans, attorneys for defendants, appellees.

WESTERFIELD, J. This is an appeal from a judgment maintaining an exception of no cause of action.

The plaintiff, Louise Ranson, brought this suit in her own behalf and as natural tutrix of her four minor children, claiming damages ex delicto due to the injury and death of her husband, Joseph Rooney, alleged to have been caused by the negligence of the agents and employees of the Overseas Railway, Inc., and/or the Mississippi Shipping Company, Inc., which corporation we shall hereafter refer to as defendants. Plaintiff claimed a total of $69,488.20.

The petition alleges that during the month of March, 1929, Rooney was employed as a mechanic by the Todd Engineering, Dry Dock & Ship Repair Company, Inc. (which corporation we shall hereafter refer to as the Todd Company); that the defendants are the owners and operators of the steamship Seatrain, which specializes in the transportation of loaded freight cars between the port of New Orleans and foreign ports; that defendants own and operate a crane which lifts loaded freight cars from the dock and transports them to and from the Seatrain, the crane being permanently attached to the dock; that on March 31, 1929, Rooney was sent by his employer, the Todd Company, to make certain repairs to the Seatrain, which vessel was, at the time, docked alongside the wharf adjacent to the crane; that, while Rooney was so engaged, one Baghley, the superintendent of defendants in charge of the vessel and the crane,

"instructed said Rooney to leave the Seatrain and to go up on the crane, which had suddenly developed trouble, and there examine the engines and gears which are used to lift and convey said loaded freight cars"; that the crane was in excess of one hundred feet high and built immediately on the docks; that it was equipped with a lifting rail, which extends out into the river a distance of approximately 125 feet, the end being directly above the hold of the ship; that Baghley brought Rooney to the top of the crane, where he might ascertain the trouble which had developed; that Baghley and Rooney were on their knees, with their heads near the running gear, listening for unusual sounds in the gears and/or engines, for the purpose of detecting the trouble, when the operator of the crane, an employee of defendants, negligently, and without notice or warning to Rooney, started the movement of the crane, with the result that Rooney's head was crushed by a bracing beam, which only cleared the engines on the platform, upon which Rooney and Baghley were, by a few inches; that Rooney, after suffering considerably, died as the result of his injury on September 23, 1929. It is also alleged that the Employers' Casualty Company, "the insurers of Todd Engineering Dry Dock & Repair Company, Inc., have recognized their liability to petitioners herein, in that Joseph E. Rooney died from injuries sustained while in the employ of the Todd Engineering Dry Dock & Repair Company, Inc., and they have expended and are going to expend to petitioners approximately the sum of $7,095.20; that therefore any judgment obtained in this matter should be subject to the Employers' Casualty Company's claim for the sum of approximately $7,095.20."

The argument in favor of the exception is based upon the contention that Rooney's

remedy as against defendants is solely in compensation and not ex delicto; that, under the allegations of the petition, Rooney was, at the time of his injury, the special employee of the defendants, notwithstanding his general employment by the Todd Company; that, if he was not the immediate employee of defendants, he was their remote employee through the Todd Company, and expressly given a right of action in compensation under section 6 of Act No. 20 of 1914, as amended by Act No. 85 of 1926, the compensation statute.

Answering this argument, counsel for plaintiff deny that Rooney ever became the employee of defendants immediately or remotely, and aver that at all times he remained the employee of the Todd Company, which recognized its liability, and through its insurers agreed to pay proper compensation under the statute; that Rooney, in leaving the vessel, where he had been sent by his employer for the purpose of making certain mechanical repairs, at the behest of defendants' superintendent, in order to render such assistance as he might in the emergency created by the sudden failure of the crane to function, simply acted as any reasonable person would have acted under the circumstances, and was at no time out of character as the employee of the Todd Company.

In so far as section 6 of the compensation statute is concerned, plaintiff's counsel contend that its provisions, when applied to the facts, as alleged in this case, are destructive of the argument of their opponents, for the reason that it would inevitably result in establishing the Todd Company as an independent contractor, whose employee, Rooney, would have no right of action against defendants in compensation, citing Horrell v. Gulf & Valley Cotton Oil Co., Inc., 15 La. App. 603, 131 So. 709, 714, decided December 15, 1930.

The question for our determination, whether Rooney, under the facts, as alleged in the petition, would have a right of action in compensation against the defendants, is most interesting, and has been made more so by learned counsel, who have briefed and argued the matter ably and thoroughly. The particular section of the compensation statute relied on (section 6) has been the subject of previous consideration by this court. Clementine v. Ritchie, 1 La. App. 296; Gaiennie Co., Ltd., et al. v. Chisolm, 3 La. App. 358; Seabury v. Arkansas Natural Gas Corp., 14 La. App. 153, 127 So. 25; Horrell v. Gulf & Valley Cotton Oil Co., Inc., supra. It reads as follows:

"Where any person (in this section referred to as as principal) undertakes to execute any work, which is a part of his trade, business or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or his dependent any compensation under this act which he would have been liable to pay if that employee had been immediately employed by him."

We said in the Horrell case:

"A study of section 6 of the act and recognition of the purpose intended to be served thereby, and an analysis of the many cases to which we have been referred, leads us to the conclusion that a general employer or principal may without retaining liability to the employees of an independent contractor, employ such independent contractor to do such special work as is not generally done directly by others

engaged in the same line of business as is the principal, such as special construction, or even such unusual repairs as are ordinarily made by specialists not customarily within the direct employ of the principal."

If we concede, arguendo, that in the instant case defendants were principals and the Todd Company not an independent contractor, such concession would involve the admission that the repairs undertaken by Rooney were ordinary in their nature, and such as, in the usual course of defendants' business, that of loading and operating their vessel, would be undertaken by its employees, an admission in no sense justified by the allegations of the petition, since it is barren of any allegation which would permit us to determine whether the repairs to the crane were such as might be the subject of an independent contract. The mechanical repair of a lifting device, such as a crane, when other than routine and trivial, would certainly be unconnected with the business of loading and transporting freight cars by sea. The construction and repair of the instrumentalities by which one's business is conducted forms no part of the business itself. In Schneider's Workmen's Compensation Law, volume 1, p. 127, we find the following quotation from an Alabama case (Stephenson v. Primrose, 8 Port. (Ala.) 155, 33 Am. Dec. 281), cited in the footnote:

"The term 'business,' in common parlance, means that employment which occupies the time, attention and labor."

The same authority quotes from a Minnesota case (State ex rel. Lennon v. District Court of Douglas County, 138 Minn. 103, 164 N. W. 366) as follows:

"When we speak of a person's trade or profession, we generally refer to that branch of the world's activities wherein he expends his usual everyday efforts to gain a livelihood."

It cannot be said, generally speaking, that the repair of defendants' crane was a part of its gainful occupation, and, unless the repairs were of such a character as to require a little difficulty in accomplishment, and such as might have been undertaken by defendants' employees, it could hardly be said that the repairs would constitute any part of the business of defendants within the meaning of section 6 of the Compensation Act, and, as we have said, the petition fails to enlighten us in that respect. But it is our opinion that section 6 has no application. Rooney was, we believe, the direct employee of defendant.

The petition is careful to allege that the purpose of the Todd Company in sending Rooney to the locus in quo was to make certain repairs upon a vessel, and that, while engaged in making these repairs, Baghley, the superintendent of the defendant company, "ordered and instructed said Rooney to leave the Seatrain, and to go up on the crane which had suddenly developed trouble," and, as illustrating the negligence of Baghley in so doing, states that he "had supervised and had charge of the crane from its beginning and should have been familiar with its construction," whereas Rooney "had never before worked on the crane and knew nothing of its steel or other construction." At another point in the petition, again referring to Baghley's conduct in relation to Rooney, it is said that he "ordered Rooney to leave the work (on the Seatrain) and to go up on a crane, upon which he had never before worked to attempt to

locate some trouble which had to be immediately repaired." It thus appears that Rooney was not an expert in repairing cranes, but, in the emergency which confronted defendants' superintendent, was taken away from the work which he had been sent to do, in the hope that he might be able to assist in the repair of the crane.

It is argued that, in so far as Rooney is concerned, his action in responding to the directions of Baghley were such as any reasonable employee might be expected to do under like circumstances, and ' that it was simply an enlargement of the scope of the original purpose for which the Todd Company had been engaged by the defendants; the formality of obtaining the consent of the Todd Company being dispensed with because of the exigency of the situation. Rooney, it is said was still the employee of the Todd Company, and his dependents are entitled to compensation from the Todd Company. In fact, it is alleged in the petition that the insurers of the Todd Company voluntarily acknowledged their liability in the premises.

Whether Rooney was entitled to compensation at the hands of the Todd Company is not an issue in this case; consequently we express no opinion in that regard. We are only concerned with the question of whether he could recover from defendants, and that question depends upon whether or not he became their employee under the circumstances of this case. It is conceded that a workman might be in the general employ of one employer and a special employee of another. It is also conceded that the question of compensation is not important, and also that it is not necessary that the contract of hiring be expressed, but may be implied from

the circumstances. Section 2 of Act No. 20 of 1914, as amended by Act No. 85 of 1926; Marks v. Rochester R. Co., 146 N. Y. 181, 40 N. E. 782. It must also be conceded that Rooney could not be regarded as a volunteer. The superintendent in charge of defendants' business was certainly within the scope of his employment in the emergency which confronted him, whatever may have been the limitations of his authority otherwise.

"One who performs services for another at the instance of an accredited employee of the latter, is not to be deemed a volunteer, where it appears that the inducing employee was clothed with actual authority to engage assistance, or where there existed an emergency from which the law implies an authority to secure the help of other persons." 28 R. C. L., "Workmen's Compensation," 761.

The nature of Rooney's employment by defendants was casual, in that it arose by chance or accident. Webster defines casual as "happening without design and unexpectedly, coming without regularity, occasional."

Referring, again, to Schneider's work on Compensation Law, we find, in volume 1, the following language, on pages 132-134, sec. 29:

"There are few states whose acts do not exclude casual employment. The term casual employment, when it appears in the act in the conjunctive with 'usual business of the employer' is not as significant and is not the subject of so much contention and varying construction as has arisen over it in those states where casual employments are exempted from the compensation act, regardless of whether or not they are in the usual course of the employers' trade or business. Under the former type of act the important question to determine is whether the particular employment is in the course of the employer's business. If it is, it is covered

by the act and it is immaterial whether or not the employment is casual."

"As illustrative of the distinction between the wording of the acts in respect to casual employment, under· the Massachusetts Act no one whose employment is 'casual' can recover compensation, while, under the British Act, and all acts containing similar provisions, one whose employment is 'of a casual nature' comes within the acts, provided it is for the purpose of the employer's trade or business. In ascertaining the meaning of the term casual as used in the Massachusetts and similarly worded acts the determinative point is the contract of service, while under those acts patterned after the British act the determinative point is the nature of the service rendered."

But in this state casual employees are not excluded from the benefits of the Compensation Law, and we are aware of no decision of our courts which has denied recovery upon the ground that the employment was casual and temporary. See, also, B. & O. S. W. R. Co. v. Burtch, 263 U. S. 540, 44 S. Ct. 165, 68 L. Ed. 433.

Rooney, it is argued, was a mechanic in the employ of the Todd Company sent to the scene of the accident for the purpose of making mechanical repairs for the defendants, having been engaged so to do through his employer, the Todd Company, and that, whether ordered by Baghley (the word "ordered" is said to have been inadvertently used) or not, his character as an employee of the Todd Company was not affected, nor was a dual employment created upon the ground that the repairs to the crane were but a reasonable extension of the original purpose for which the Todd Company, as employer, had despatched him to defendant's premises. The difficulty with this view is that it fails to take into consideration the fact that it imposes a responsibility upon the Todd Company which it did not originally contemplate. It may well be that Rooney's

employer had every confidence in his ability to repair the vessel Seatrain because of his familiarity with the work he was called upon to do upon the vessel, and was willing to assume full responsibility for its proper execution and, at the same time, be wholly without any confidence in his capacity to repair a crane, with which, according to the allegations of the petition, he was unfamiliar, and concerning which they were unwilling to assume responsibility. Let us suppose that, in attempting to repair this crane, Rooney had damaged it through his lack of skill and knowledge. Could it be said that the defendants would have had an action in damages against the Todd Company, who knew nothing whatever of Rooney's undertaking to make the repairs? Would the master be liable for the servant's delinquencies in such circumstances?

We are of opinion that, for the purpose of the work which Rooney was engaged in at the time of his fatal accident, he was the direct and special employee of the defendants, and his dependents are entitled to claim compensation under the Workmen's Compensation Law, Act No. 20 of 1914 and its amendments, and not entitled to prosecute an action sounding in damages ex delicto, under article 2315 of the Civil Code.

For the reasons herein assigned, the judgment appealed from is affirmed.

———

JANVIER, J. (dissenting). I do not believe that the allegations of the petition are sufficiently definite with reference to what Rooney was engaged in doing · to warrant a holding that he became the direct ·employee of defendant when he undertook at the request of defendant, to investigate the crane in an effort to discover what was causing the trouble there-

in. He was merely consenting, on behalf of his employer, to an enlargement of the purpose for which he was sent to the scene. If I send to a master plumber and ask him to send me a mechanic to fix a water pipe, and, while the mechanic is working on the water pipe, I discover trouble in the drain pipe, and ask the mechanic to fix that also, I do not thereby make him my employee. He still remains solely in the employ of the master plumber, and I have merely enlarged the scope of the original work undertaken. The question of whether he was impliedly authorized by his employer to agree to do additional work depends on the nature of that additional work and on whether it was such as an ordinarily intelligent and conscientious employee could be expected to undertake on behalf of his employer. If the additional work is of such a nature, then it can be said that the original contract is enlarged. If the new work is of an entirely different kind, and it is fair to presume that the employer would not have undertaken it, then it is not an enlargement of the scope of the work originally undertaken, but is, in fact, new work. In such case the employee would lose his character as an employee of the original master, and would become an employee of the new master, but, if it was work which any reasonable man would know the master would approve, then the employee would retain his character as the employee of the original master.

Here the allegations of the petition are not full, and do not clearly show what the new work was, nor how closely it resembled the original work undertaken, and I believe plaintiff should be given an opportunity to amend, so as to show just what was the new work deceased was requested to perform. In other words, we cannot tell from the allegations of the petition whether the new work was an enlargement of the scope of the original contract, or was so different from that originally contemplated as to constitute deceased, quo ad the new work, the employee of the new employer.

If the new work was such as might be considered as a mere enlargement of the scope of the original contract, then all the more is it necessary that we be fully enlightened as to the nature thereof, so that we may determine whether it was such work as is within the contemplation of section 6 of Act No. 20 of 1914. If it was work which could not be contracted away without retention of compensation liability, then such liability is retained, and, since the Compensation Act is exclusive in all cases in which it applies, defendants' only liability is such as is created by that act. If, however, the work is of a nature which is not contemplated by section 6, and which may be contracted away, then, if there was negligence on the part of defendant, tort liability may exist. I cannot say from the allegations just what was the nature of the work, and therefore believe that the suit should not be dismissed, but that an opportunity should be afforded plaintiff to amend his petition so as to show clearly what the nature of that work was. I think we should follow the principle so often announced and so lately followed in Dawson v. Jahncke Dry Docks, Inc. (Court of Appeal, Parish of Orleans, decided January 5, 1931) 131 So. 743: That we will not dismiss a suit under an exception of no cause of action where the exception of no cause of action is based on mere omission of allegations. Plaintiff should be given an opportunity to make the necessary allegations before the suit is finally dismissed.

I believe the matter should be remanded to afford an opportunity to amend, and therefore respectfully dissent.