Edna Harris is the widow of Lonnie Harris, a negro truck driver who, on or about August 8, 1944, was killed in an automobile accident in the state of Georgia when a large poultry truck, which he was driving, left the highway because of an unlighted car which was parked on the road ahead of it. Edna Harris brings this suit in an effort to recover compensation for the death of her husband in accordance with the Workmen's Compensation Laws of the State of Louisiana, Act No. 20 of 1914, as amended, and she prays that she be awarded $20 per week for 300 weeks and $250 as burial and incidental expenses. In the alternative that if it appear that her claim is controlled by the laws of the State of Georgia and not by the laws of the State of Louisiana, she prays that she be awarded compensation in the sum of $3,825 payable at the rate of $12.75 per week, and that she be also awarded $100 as burial expenses.
The defendants are Nick Christina by whom Harris had been employed at least until very shortly before the accident, Fisher Kansas, the owner of the poultry truck which Harris was driving at the time, and Sun Indemnity Company of New York, which corporation had issued to Fisher Kansas a policy of workmen's compensation insurance. Nick Christina contends that at the time of the accident, Harris was not in his employ, and both of the other defendants, Fisher Kansas and Sun Indemnity Company of New York, contend that at the time Harris was not in the employ of Kansas. The Sun Indemnity Company further contends that if it appear that at the time of the accident Lonnie Harris was in the employ of Kansas, still it is not liable for the reason that the policy which was issued to Kansas, by its *Page 404 
terms, was limited to cases which might arise under the Louisiana Workmen's Compensation Law, whereas this accident occurred in the State of Georgia in which state Harris was employed if there was a contract of employment.
In the Civil District Court there was judgment dismissing the suit as against Christina but in favor of plaintiff and against Fisher Kansas and Sun Indemnity Company of New York as prayed for. Both Kansas and the Sun Indemnity Company have appealed. Plaintiff did not appeal from the judgment insofar as it dismissed her suit against Christina.
The facts of the case are interesting and most of them are not in dispute. We shall state them, calling attention wherever necessary to the questions of fact on which there is a controversy.
Lonnie Harris, a few days before the accident, was unquestionably an employee of Nick Christina who operates a wholesale poultry business in Algiers, across the Mississippi River from the main portion of New Orleans. Together with another employee of Christina, Harris left New Orleans on a large poultry truck belonging to Christina to go to various points in Georgia to gather crates of chickens which were to be transported on Christina's truck to his place of business in Louisiana.
At about that same time, another poultry dealer, Fisher Kansas, who operates his business in New Orleans, sent one of his poultry trucks to the same section in Georgia, also for the purpose of gathering crates of poultry to be carried to him in New Orleans. The Kansas truck was being driven by a negro driver, Carl Johnson, and on it was Isaac Kansas, a younger brother of Fisher Kansas, Isaac being referred to throughout the record as "Izzy". The Christina truck on which Harris was employed proceeded to Gainesville, Ga. There Harris became intoxicated and the other employee of Christina, Richard Walker, refused to allow him to come back to New Orleans on the truck, and left him (Harris) in Gainesville, Ga. At about that time the Kansas truck also went to Gainesville, via Atlanta. Gainesville is about 50 miles or so beyond Atlanta. Izzy Kansas got off the truck as it went through Atlanta, and left it in charge of Carl Johnson, who proceeded to Gainesville and gathered up the crates of poultry there, and in the surrounding territory. Johnson was instructed as to where he might pick up Izzy Kansas in Atlanta on the way back to New Orleans.
Johnson, in charge of the Kansas truck, and Harris who had been left by the Christina truck in Gainesville, knew each other and Johnson knew that Harris had formerly driven poultry trucks and was familiar with that kind of work. An arrangement was made between Johnson and Harris by which Harris was to return to New Orleans on the Kansas truck. The terms of that arrangement are in dispute. At any rate, the truck left Gainesville with Johnson at the wheel, and when it arrived at the filling station in Atlanta, at which it was to meet Izzy Kansas, Johnson was at the wheel and Harris was alongside him. As the truck was about to leave Atlanta, Johnson said that he was tired and suggested that Harris drive the truck for a while. Harris agreed and Johnson got into the rear of the truck to rest. Harris took the wheel, Izzy sat alongside him, and they proceeded a distance of some 80 or 100 miles. There the accident occurred and Harris was killed.
It is the contention of plaintiff that Harris was employed by Johnson to help drive the Kansas truck back to New Orleans, and that therefore he became an employee of Kansas. On the other hand, Kansas and the Sun Indemnity Company maintain that Harris was not employed but was merely being given a ride to New Orleans and that during the course of that ride he volunteered to do a part of the driving. This question of whether there was employment is the first one to be considered because if Harris was not in the employ of Kansas then there can be no recovery either under the laws of the State of Louisiana or under the laws of the State of Georgia, and it will not be necessary to consider the question of whether the policy issued by the Sun Indemnity Company is applicable.
Our brother below found that Harris was an employee of Kansas and in his reasons for judgment, said: *Page 405 
"The chauffer of the Kansas truck stated that he employed Harris, and the undisputed evidence is that Harris met his death while performing services as a chauffer on the Fisher Kansas truck. Harris was therefore not an invitee; he was the actual driver of the truck and he met his death while so driving.
* * * * * *
"No man should be expected to render services in a tedious and hazardous occupation at night without compensation. Here is a fair presumption of employment.
* * * * * *
"We have here three defendants, and all claim nonliability. A man is killed. His dependents bring an action. Surely someone owes these dependents compensation. * * *"
In addition to this presumption that since Harris was driving the Kansas truck at the time of the accident he must have been in the employ of Kansas, there are certain other bits of evidence which may be pointed to as indicating that Harris was an employee. In the first place, when Johnson was placed on the stand as a witness for plaintiff, he testified that he (Johnson) had hired Harris to drive the truck and there is also the testimony of Izzy Kansas that at the time Harris agreed to drive, he (Izzy) was "glad" for him to do so. But there is other evidence which we think completely refutes the testimony of Johnson that he had hired Harris, and all of the circumstances surrounding the occurrence destroy the presumption which otherwise might have been very strong that Harris was, in truth, an employee.
First, we think that since Harris was known by both Johnson and Izzy Kansas to be a truck driver who lived in New Orleans, who was "stranded" several hundred miles from home, there was nothing unusual about their permitting him to make his way back home on the truck which was also on its way to New Orleans. And since they both knew that Harris had been employed by his former employer in driving just such a truck in just such a business, it was quite to be expected that he might be willing, without compensation, to relieve Johnson when he became tired. The record shows conclusively that Harris had not driven from Gainesville to Atlanta as plaintiff contends but had taken the wheel only when the truck left Atlanta.
Johnson's statement that he had hired Harris in Gainesville was made on the witness stand and is completely at variance with a written statement made by him shortly after the accident when he had returned to New Orleans for in that statement he said, without any equivocation, that he did not know if Harris was hired to drive the truck back to New Orleans or if he was merely being given a lift to New Orleans. In that statement also he failed to say that he had hired Harris, and, on the contrary, said that Izzy Harris had brought Harris to him and had said to him that Harris was driving the truck a part of the way back to New Orleans. His testimony on the witness stand is so contrary to his statement and certain statements made on the stand are so contrary to others made also on the stand that we think his whole testimony is entirely unreliable. He said at one time that he had authority to hire relief drivers and later said that he had not, and that he had authority only to hire local employees where necessary to help him load or unload the truck. At one part of his testimony he said that he had not told Izzy Kansas that he had employed Harris, and shortly thereafter he stated that he had told Kansas of this employment. Johnson also said that he was in charge of the truck. This is denied by Izzy Kansas and it is difficult to believe that Johnson, the colored driver, was put in charge of the truck, although the brother of Fisher Kansas was also sent along on the trip. The record shows without any doubt that though possibly in the distant past other drivers had been sent along with Johnson, no one had accompanied him on the preceding ten or twelve trips except Izzy Kansas, and that while sometimes poultry dealers did send two drivers on such a truck, it was quite customary to send only one. Furthermore, though Johnson claims that he hired Harris to help drive the truck, he admits that he said nothing whatever about what the pay would be nor concerning any other details of the employment. Fisher Kansas, one of the defendants, said positively that Johnson had *Page 406 
no authority whatever to hire a relief driver though he admitted that on a few occasions, when Johnson would return from a trip, he would repay to him a few dollars which he said he had paid to local laborers to help him in loading the truck.
The question involved here is purely one of fact, and we hesitate to reverse the finding of our brother below on such a question, but the record leaves no doubt whatever in our minds that, at the time of the accident which caused the death of Harris, he was purely a volunteer and was in no sense an employee of Fisher Kansas; consequently there can be no recovery in compensation.
It is not necessary that we discuss the other contentions.
The judgment appealed from is annulled, avoided and reversed and plaintiff's suit is dismissed at her cost.
Reversed.