[Civ. No. 8886.   Third Dist.   Dec. 9, 1955.]

GUARANTEE INSURANCE COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and J. A. McCLESKEY, Respondents.

Mullen & Filippi for Petitioner.

Everett A. Corten, Daniel C. Murphy and Frank B. Collier for Respondents.

SCHOTTKY, J.—This is a proceeding to review and annul an award of workmen's compensation benefits to J. A. McCleskey which is based on a finding that McCleskey was injured while acting as an employee of petitioner's assured, and not as an independent contractor or joint venturer.

The facts, which are not in substantial dispute, may be summarized as follows: Respondent McCleskey and his father had a life interest in 690 acres of agricultural land. On May 12, 1953, they entered into a three-year agreement with Verne B. LaCross and Manuel Matizo whereby the lessees would supply at least 150 cows and certain equipment for the purpose of carrying on a dairy business upon the lessors' land. Among other things, the lease provided that the lessors would furnish suitable pasturage and/or necessary and proper

feed for the milk cows at such time and in such quantity as should be determined by the parties. The lessors would not incur any other expenses. As rental of the premises and compensation for pasture and feed, the lessors would receive one-half of the proceeds of milk products produced. The lessees were to have 150 cows actually producing and averaging one pound of butterfat per cow per day, otherwise the lessors would be entitled to received one-half pound of butterfat per cow per day. Petitioner became the workmen's compensation insurance carrier for the lessees, which, under the terms of the lease, was for the protection of all workers and employees of the lessees in and about the operation of the dairy.

Respondent McCleskey during the year 1953 received around $2,000 a month as his share of the milk checks. His obligation was fulfilled merely by growing, cutting and stacking hay, which the lessees took to the cows, or by letting the cows out to the pasture to eat green food. Later on it was noticed that insects in the pasture bothered the cows, and in April, 1954, the parties discussed feeding them green alfalfa in the corral. The new operation would require the alfalfa to be chopped up and loaded into a wagon. The parties figured that the operation would only require four hours or a half day's work, and rather than hire a full-time employee at about $300 per month they decided that the respondent McCleskey would do the job for $150 per month.

McCleskey already had the chopper and tractor, and although he purchased the wagon after the agreement he testified that he needed it for other work on his own ranch. The alfalfa was sometimes hauled and chopped by Mr. McCleskey and sometimes by his hired hands. The lessees directed how much green alfalfa was fed to the stock. If milk production tended to diminish, they would order more green alfalfa to be chopped and brought to the cows. Other than this, no suggestions or directions were made about the manner in which the work was to be done. The green feeding operation was something new and none of the parties knew very much about it. There was no particular time for payment of the $150 a month and no deductions were made for state or federal tax purposes. In chopping the alfalfa on September 3, 1954, the knives became clogged. McCleskey put his right hand in to free them and was severely injured.

It was found that the injury caused temporary total disability beginning October 16, 1954, to January 31, 1955, at

the rate of $21.38 a week, based upon earnings of $150 a month, and indefinitely thereafter until the further order of the commission. The cost of medical treatment procured, together with future medical treatment, was awarded and jurisdiction was reserved for future determination of permanent disability.

Petitioner's first contention is that the evidence does not support the finding that respondent McCleskey was an employee of LaCross and Matizo. It quotes from section 3351 of the Labor Code as follows:

" 'Employee' means every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed."

Both petitioner and respondent quote section 3357 of the Labor Code which provides: "Any person rendering service for another, other than as an independent contractor, or unless expressly excluded herein, is presumed to be an employee." However, petitioner contends that McCleskey was not rendering service under a contract of hire. Petitioner argues that the proper construction of the original lease instrument is that it demises a portion of the premises, i.e., the barn and corrals, for the operation of a dairy, and it is also a contract for sale of feed necessary and proper for the 150-cow herd from the land retained by McCleskey and to be grown by him. It argues that the relationship of the parties, therefore, was that of vendor and vendee with respect to the feed to be provided for the dairy, the compensation to be a gross share of the profit; that the relationships of vendor-vendee and employer-employee are mutually exclusive; that one selling a product is not in service to the vendee, but is an equal and deals at arm's length and is not subject to the control of the other. Petitioner argues that when the parties agreed to green-feed the cattle there was no change in the terms of the original lease because it was McCleskey's obligation under the lease to furnish feed necessary and proper for the cows. Petitioner argues further that because of the outlay for equipment by McCleskey and, presumably, because he was to bear the cost of operating the equipment and maintaining it, it was agreed that Matizo and LaCross would pay the $150 a month, and that this merely represented additional compensation for the feed.

Respondents in reply argue that the parties considered that McCleskey was fulfilling the original obligation by

maintaining his pasture lands and permitting lessees to use them, and by furnishing stacked hay to the lessees. Respondents ask, "Could the lessees have compelled McCleskey to furnish them with chopped alfalfa? Could they have broken the lease or refused to pay him his percentage on the ground that he did not? We do not think so, and apparently they did not think so either. When they decided to feed chopped alfalfa to the cows they contemplated hiring someone to chop it. If they had hired anyone else he would certainly have been their employee. There was nothing to prevent them from entering into a new and additional agreement with McCleskey, which they did. Under this new and additional agreement, McCleskey was performing for them the service of chopping the alfalfa."

Petitioner contends further that even if McCleskey were in the broad sense rendering service, it was as an independent contractor, quoting Labor Code, section 3353, which provides:

" 'Independent contractor' means any person who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished."

Respondents quote the following from section 5705 of the Labor Code:

". . . The following are affirmative defenses, and the burden of proof rests upon the employer to establish them:

"(a) That an injured person claiming to be an employee was an independent contractor or otherwise excluded from the protection of this division where there is proof that the injured person was at the time of his injury actually performing service for the alleged employer."

They argue that because of the presumption of employment raised by Labor Code, section 3357, and the placing of the burden of proof on the petitioner to prove the relationship of independent contractor by Labor Code, section 5705, the burden of proof was upon the petitioner, and the petitioner did not sustain the burden or overcome the presumption. Respondents argue that as stated before any other person hired to do this work would obviously have been legally an employee. Therefore, say respondents, the presumption is squarely applicable and McCleskey should be considered an employee, citing *Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577 [250 P. 570]; *Skillman* v. *Industrial Acc. Com.*, 131 Cal.App. 493 [21 P.2d 658]; *Schaller* v. *Industrial Acc. Com.*, 11 Cal.

2d 46 [77 P.2d 836] ; *California Comp. Ins. Co.* v. *Industrial Acc. Com.,* 86 Cal.App.2d 861 [195 P.2d 880].

In *Hillen* v. *Industrial Acc. Com., supra,* the court said at page 580:

"By the terms of the Workmen's Compensation Law (Stats. 1917, p. 831) 'every person in the service of an employer . . . under any appointment or contract of hire' is an employee. (§ 8a.) Any person rendering service for another, other than as an independent contractor, or as expressly excluded by the provisions of the act, is presumed to be an employee. (§ 8b.) It is admitted that Downing was at the time of his injury actually performing service for Hillen. Consequently, the burden of proof rests upon Hillen to establish that Downing was an independent contractor. (§ 19d [1].) It was therefore necessary for him to show that Downing was, within the definition of the term, a person rendering 'service, other than manual labor, for a specified recompense for a specified result, under control of his principal as to the result of his work only and not as to the means by which such result is accomplished.' (§ 8b.) Whether or not the relation of employer and employee existed in this case, under the oral contract entered into, is a question of mixed law and fact, to be proved like any other question. The finding of the Commission, in effect, that the relation existed between Hillen and Downing is binding on this court. (*Pacific Gas & Elec. Co.* v. *Industrial Acc. Com.,* 180 Cal. 497, 499 [181 P. 788].) Unless there is such an entire absence of evidence in the record as to render the finding unreasonable, or in excess of the powers of the Commission, the court is not empowered to set it aside. (*George L. Eastman Co.* v. *Industrial Acc. Com.,* 186 Cal. 587, 598 [200 P. 17].) The award of the Commission may be annulled only if there is no substantial evidence in support of its findings. (*Press Publishing Co.* v. *Industrial Acc. Com.,* 190 Cal. 114, 124 [210 P. 820].) "

It is apparent that the principal question that we must determine upon this appeal is whether or not the evidence before the commission compels a finding that the services performed by McCleskey under the new and additional agreement were performed under an independent contractor relationship. The finding of the commission was that "At the time of said injury applicant was not rendering services to defendant-employers, or either or both of them, as an independent contractor or as a joint venturer." As stated in *Schaller* v. *Industrial Acc. Com., supra,* at page 50:

. "Where findings made by the commission are supported by substantial evidence, or by inferences which may fairly be drawn from the evidence, even though the evidence be susceptible of opposing inferences, those findings will not be disturbed by an appellate tribunal. (*Schramm* v. *Industrial Acc. Com.*, 15 Cal.App.2d 475, 481 [59 P.2d 858]; *Hartford Acc. & Indem. Co.* v. *Industrial Acc. Com.*, 202 Cal. 688, 693 [262 P. 309, 58 A.L.R. 1392]; *Roman Catholic Archbishop* v. *Industrial Acc. Com.*, 194 Cal. 660 [230 P. 1]; *Western Pac. R. Co.* v. *Industrial Acc. Com.*, 193 Cal. 413 [224 P. 754].) The question of whether a worker is an employee within the meaning of the Compensation Act (Act 4749, Deering's Gen. Laws, vol. 2, p. 2272 et seq.), is referred to as a question of mixed law and fact to be proved like any other question. (*Hillen* v. *Industrial Acc. Com.* 199 Cal. 577 [250 P. 570]; *La Franchi* v. *Industrial Acc. Com.*, 213 Cal. 675 [3 P.2d 305].) It is a question of fact upon which the judgment of the commission is conclusive where the facts are in dispute. It becomes a question of law only when but one inference can reasonably be drawn from the facts. Where two opposing inferences may be drawn from the evidence, and the inference accepted by the commission is reasonable, and is supported by evidence in the record, that inference must be sustained. (*Schramm* v. *Industrial Acc. Com., supra*; *Western Pac. R. Co.* v. *Industrial Acc. Com., supra*; *Roman Catholic Archbishop* v. *Industrial Acc. Com., supra*.) Moreover, in cases of this character the burden of proof rests upon an alleged employer to establish 'that an injured person claiming to be an employee is an independent contractor or otherwise excluded from the protection of (the) act, where there is proof that such injured person was at the time of his injury actually performing service for the alleged employer.' [Citing cases.]"

Applying these well settled rules to the instant case we are convinced upon the record here that it was a question of fact for the respondent commission to determine, and while the evidence and inferences therefrom might support a finding that the applicant McCleskey was rendering service as an independent contractor, there is substantial evidence to support the finding of the commission that such relationship did not exist. For it is fairly inferable from the evidence that the new agreement as to the change in manner of feed, necessitating the chopping of the alfalfa, was not one that McCleskey was required to enter into and that LaCross and Matizo were willing to pay him $150 per month for the additional work

required to be performed by him. The following testimony of McCleskey supports such a conclusion:

"A. Well, when we started the green feeding they figured they had too much work to do for themselves and rather than—and it wasn't enough to justify them hiring a full-time man, you know. It was a split shift, in other words, so they asked me if I would be interested in working it on the split shift that way, if I would be able to do the green feeding.

"Q. To do the green feeding you had to chop it up, is that it?

"A. I had to chop it, and it's loaded into a wagon that automatically unloads.

"Q. Was there anything said about you being paid to do the chopping? A. Yes, sir.

"Q. What was that?

"A. They told me they'd pay me $150.00 a month.

"Q. Who told you that?

"A. Mr. LaCross and Matizo."

While it is true that there are features of the employment which may indicate a relationship of independent contractor, these only serve to create a conflict in the evidence and in the inferences to be drawn therefrom, which conflict the respondent commission resolved adversely to petitioner. We are satisfied that there is substantial evidence to support the finding that McCleskey was an employee and not an independent contractor or a joint venturer.

Petitioner's final contention is that the evidence does not support the finding that the earnings of respondent McCleskey were $150 per month. This contention lacks merit as the record shows that the $150 a month was arrived at by taking one-half of the wages that the employers would have had to pay a farmhand for full time work, because McCleskey would have to work approximately half time to do the job. We are convinced that this finding of the commission is supported by the record.

The award is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied February 1, 1956.