CITY OF SEWARD, and Employers' Liability Assurance Corporation, a foreign insurance corporation, Appellants,

v.

Alva WISDOM (deceased), Mrs. Mabel Wisdom and the Alaska Workmen's Compensation Board, Appellees.

No. 627.

Supreme Court of Alaska.

May 5, 1966.

10. Supra note 7. To the same effect: S. S. Kresge Co. v. United States, 218 F.Supp. 240 (E.D.Mich.1963).

George N. Hayes and James Singleton, Delaney, Wiles, Moore & Hayes, Anchorage, for appellants.

R. E. Baumgartner, Seward, for appellee Wisdom.

Warren C. Colver, Atty. Gen., and Dorothy Awes Haaland, Asst. Dist. Atty., for appellee Alaska Workmen's Compensation Board.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

Alva Wisdom lost his life when a seismic wave resulting from the earthquake of March 27, 1964, engulfed portions of Seward, Alaska. This appeal raises the question of whether, at the time of his death, Alva Wisdom was an employee of the City of Seward. On the record presented to this court, we are constrained to hold that Alva Wisdom was not an employee of the City of Seward at the time of his tragic death. We have therefore concluded that Alva Wisdom's widow (appellee Mabel L. Wisdom) is not entitled to receive any death benefits under the Alaska Workmen's Compensation Act.

On March 27, 1964, Alaska was subjected to an earthquake of tremendous magnitude. At approximately 5:30 p. m. on March 27, 1964, the City of Seward was not only damaged by this earthquake but was also struck by a tidal wave. As a result, the "lower end" of Seward was severely damaged and sections of the city caught on fire.

After the initial earthquake and tidal wave had struck, the following events transpired according to the testimony of Seward's Chief of Police Lloyd Heffner:

Well, after the ground quit shaking I went to the window and saw what appeared to be the whole lower end of town was burning. I had my wife bundle up the kids and sent her out across the lagoon to a friend's house. I went down town to see if I couldn't round up some men and be of assistance in fighting the fire or checking the damage. I went to the Federal Building which was at that time the seat of the municipal government, and along the way grabbed male personnel and told them to report to me at the Federal Building. We established guards on the main street in the business areas to guard against looting. I went down and checked the fire and saw the possibilities of its spredding [sic] and grabbed several men one of whom * * now most of this is not fact because things were happening pretty fast that night and I'm not real sure of the people I talked to and the people that I utilized. I grabbed several people, I believe, Gene Kirkpatrick, was the man I put in charge or told to get a group of people and go to the Second Avenue Road entrance which leads up to Dairy Hill, and clear an access road out of town so that in the event the fire spread the people would have a way out. *I vaguely recall, but I*

*can not say with any certainty at all, that around this time Mr. Wisdom came up and asked if he could * * * be of assistance, and this is * * * this sticks in my mind and I am not at all certain of it, and I sent him if he did I am certain that I sent him with Kirkpatrick to clear the access road,* but as I said this* is just something that sticks in my mind, it is * * * I do not actually remember talking to the man, but it seems to me that he come around about the time I sent Kirkpatrick to clear the road.[1] (Emphasis furnished.)

The record further indicates that during this period it had been reported to Chief Heffner that the Second Avenue Road had been blocked by debris. Fearing that the fires might get out of control, and also the possibility of recurrence of tidal waves, Chief Heffner determined to make available an escape route from Seward to higher ground out of town. In furtherance of this plan, Chief Heffner dispatched Gene Kirkpatrick to clear the debris blocking the Second Avenue Road.[2]

At approximately 9:00 p. m. on the evening of March 27, 1964, the City of Seward was again hit by a tidal wave. Shortly after this occurred, Chief Heffner arrived in the vicinity of the Second Avenue Road. Upon his arrival, he was informed that Alva Wisdom had drowned while in

his pickup truck showing his lights so that the cat operator, Mr. Reed, could see where he was going.

Upon essentially the facts as outlined above, the Alaska Workmen's Compensation Board determined that Alva Wisdom was an employee of the City of Seward at the time he drowned. In reaching this conclusion, the Board held that an emergency situation existed during which Chief Heffner had implied authority, on behalf of the City of Seward, to employ workers.[3] On this point the Board held

that at the instant of Alva Wisdom's death he was in fact an employee of the city. * * *

Wisdom was employed by the city as a laborer and was drowned in an incident

1. On cross-examination, Chief Heffner testified to the following:
 Q. Now the night of the earthquake itself and the night that Mr. Wisdom was drowned, you say to your best recollection he came up to you and indicated that he wanted to assist.
 A. Yes, sir, I believe that this is so, but * * *
 Q. And to the best of your recollection you sent him along with Mr. Kirkpatrick?
 A. Yes, sir.
 * * * * *
 Q. But you yourself recall talking to Wisdom?
 A. I vaguely recall having seen him.
 * * * * *
 Q. Now, Mr. Wisdom did volunteer his services to you?
 A. Sir, as near as I can remember * * * again I will say that I have but a very vague recollection of talking with Mr. Wisdom, briefly
 * * * * *
 Q. Yes, well as nearly as you can remember.
 A. As nearly as I can remember, Mr. Wisdom was at the Federal Building.
 Q. Did he volunteer his services?
 A. As nearly as I can remember, and this is very, very vague, and like I say, it sticks in my mind, Mr. Wisdom asked what he could do. And again I say, this is a very vague recollection.
 Q. Did he volunteer his services to the best of your recollection, then?
 A. To the best of my recollection, he did, sir.

2. Chief Heffner testified that:
 I had learned that there had been a couple of tidal waves and felt that people should have access to higher ground and also an escape route in the event of [sic] the fire got away.

3. In its Conclusions of Law, the Board stated:
 It is a well established rule that a person who is asked for help in an emergency which threatens the employer's interests becomes an employee under an implied contract of hire. In this case, it may be true that under ordinary circumstances Police Chief Heffner was without power to make contracts binding on the City of Seward. However, in this emergency he had the implied authority to employ workers since the

arising from and in the course of his employment.

The Board also concluded that Mrs. Mabel Wisdom was entitled to death benefits and funeral expenses under the Alaska Workmen's Compensation Act.[4]

The Board's award was then appealed to the superior court where the appeal was heard on the record. Thereafter, on May 21, 1965, the superior court rendered an oral "Memorandum of Decision" in which the Board's award was sustained.[5] After concluding that the Board's findings of fact were "substantially correct" the superior court stated:

In the case at hand, Wisdom was performing duties in a true emergency. The Chief of Police of the City of Seward had determined that an escape route had to be opened to permit the evacuation of the citizens of the town in the event that the fire in Seward could not be controlled or in the event of seismic waves. * * * At the time Wisdom volunteered, a true state of emergency existed.

The superior court then determined that Alva Wisdom was an employee of the City of Seward and his death therefore was within the scope of the Alaska Workmen's Compensation Act because:

* * * Lloyd Heffner, as Chief of Police in Seward during the emergency, had implied authority to employ whatever men were necessary to provide for public safety in the emergency then existing. The extent of these emergency powers to act is directly related to the magnitude of the emergency. In deed, public safety imperatively required Heffner to take whatever means were then available in order to protect life and property.

The term employee under the Alaska Workmens' Compensation Act means any person employed by an employer. An employer may include, among others, the State or its political subdivisions. A.S. 20.30.265. This definition is not nearly as restrictive as that adopted in the Federal Employees Compensation Act. * *

An employment by implication arising out of an emergency has been recognized in many jurisdictions. * * *[6]

This case turns on whether or not reasonable means may be employed in an emergency such as that confronting public authority at Seward at the time of the earthquake. If so, under the circum-

---

city must be presumed to have intended that necessary measures be taken to provide for the welfare of the community in clearing the access road in the event an evacuation of Seward became necessary.

In support of its conclusion that the Chief of Police of Seward was vested with implied authority to employ workers the Board cited Cherry v. Industrial Comm'n, 246 Wis. 279, 16 N.W.2d 800 (1944); Conveyors' Corp. of America v. Industrial Comm'n, 200 Wis. 512, 228 N.W. 118 (1929).

4. The Board's decision of January 27, 1965, provided in part:

The defendant [City of Seward] is to pay Mrs. Mabel Wisdom death benefits of $28.35 weekly from March 27, 1964, until death or remarriage with 104 weeks benefits in lump sum upon remarriage. In addition, the defendant is to pay funeral expenses not exceeding $1,000 and statutory attorney fees based on compensation awarded by this decision.

5. As to its "Memorandum of Decision," the superior court's Final Order of May 21, 1965, read in part:

ORDERED and ADJUDGED that the decision of the Alaska Workmen's Compensation Board of January 27, 1965 is affirmed.

The Memorandum of Decision orally given heretofore shall be considered Findings of Fact and Conclusions of Law upon which this Final Order is entered.

6. In support of this last statement, the superior court cited Anderson v. Bituminous Cas. Co., 155 Neb. 590, 52 N.W.2d 814 (1952); Gulbrandson v. Town of Midland, 72 S.D. 461, 36 N.W.2d 655 (1949); Shawano County v. Industrial Comm'n, 219 Wis. 513, 263 N.W. 590 (1935); Vilas County v. Monk, 200 Wis. 451, 228 N.W. 591 (1930); Conveyors' Corp. of America v. Industrial Comm'n, supra note 3.

stances a contract of employment may be implied. This is entirely consistent with the principles laid down in Selid Construction versus Guaranty Insurance Company, * * *.

Also pertinent is the fact that apparently the superior court alternatively concluded that Chief Heffner, as Deputy Director of Police in the Seward area for Civil Defense, possessed the authority to employ, with or without compensation, civil defense workers during the period in question.[7]

Despite the extremely compelling countervailing emotional considerations which this case presents, we have concluded that both the Board and the superior court erred in holding that Alva Wisdom was an employee of the City of Seward.

In Selid Constr. Co. v. Guarantee Ins. Co.,[8] we held, in determining an employment issue under our compensation act, that

The relationship of employer-employee can only be created by a contract, which may be express or implied.

 All parties to this appeal are in agreement that unless an employee-employer relationship existed between Alva Wisdom and the City of Seward at the time of death, the provisions of the Alaska Workmen's Compensation Act are not applicable.[9] We are of the view that appellee Mrs.

---

7. Our Civil Defense Act, in its pertinent parts, reads:

Chapter 20. *Civil Defense.*
*Sec. 26.20.010. Policy and purpose.*
(a) Because of the national emergency and the possibility of disasters or emergencies resulting from enemy attack, sabotage or other hostile action, and in order to insure adequate preparations for such disasters or ·emergencies, and generally to provide for the common defense and to insure the public peace, health, and safety, and to preserve the lives and property of the people of the state, it is found and declared to be necessary * * *.

As to local civil defense organizations, AS 26.20.060(a) and (b) (2) provide:
(a) Each district of the state shall establish a local organization for civil defense in accordance with the state civil defense plan and program. The Department of Public Safety shall appoint a director for each district. * * *
(b) The director of each district may * * * * *
(2) appoint, employ, remove or provide, with or without compensation, deputy district directors of civil defense, air raid wardens, rescue teams, auxiliary fire and police personnel, and other civilian defense workers; * * *

As to immunity under the act, AS 26.-20.140(a) provides:
Neither the state nor any district of the state, nor the agents or representatives of the state or district, is liable for personal injury or property damage sustained by any person appointed or acting as a volunteer civilian defense worker. This provision does not affect

the right of a person to receive benefits or compensation to which he might otherwise be entitled under the workmen's compensation law or a pension law or an Act of Congress.

8. 355 P.2d 389, 393 (Alaska 1960).

9. For other authorities holding that a contract of employment or hire is a prerequisite to recovery under compensation acts, see: Anderson v. Poray, Inc., 42 Ill.App.2d 1, 191 N.E.2d 417, 420 (1963); Wilhelm v. Industrial Comm'n, 399 Ill. 80, 77 N.E.2d 174, 178 (1948); Lewis v. Confer, 188 Kan. 779, 365 P.2d 1103, 1105 (1961); Robinson v. Muller, 181 Kan. 150, 309 P.2d 651, 654 (1957); Scott v. Alsar Co., 336 Mich. 532, 58 N.W.2d 910, 912 (1953); Denton v. Young, 203 Okl. 688, 226 P.2d 406, 409 (1950); Haugen v. Central Lutheran Church, 58 Wash.2d 166, 361 P.2d 637, 638 (1961); Wendlandt v. Industrial Comm'n, 256 Wis. 62, 39 N.W.2d 854, 856 (1949).

In the Wendlandt case, the court stated:
The foundation of the Workmen's Compensation Act is the existence of an actual employer-employe [sic] relationship. It was designed to serve primarily the interests of contractually related individuals, the employer and the employe [sic].

Note also in this regard, AS 23.30.010 of the Alaska Workmen's Compensation Act provides:
Compensation is payable under this chapter in respect of disability or death of an employee.

AS 23.30.045 obligates an employer to pay compensation awarded under the act. AS 23.30.265(11) defines "employee" as one who is "employed by an employer as

Mabel Wisdom has failed to prove that a contract of employment, either express or implied, existed between her husband and the City of Seward on the evening of March 27, 1964.[10] We are of the further opinion, and so hold, that the Board's conclusion that Alva Wisdom was an employee of the City of Seward is erroneous.[11]

The evidence is undisputed that prior to the evening of March 27, 1964, Alva Wisdom had resided in Seward for a period of seventeen years and during this time never worked for the City of Seward. Throughout this seventeen year period, Alva Wisdom was employed as a longshoreman on the docks at Seward. It is further undisputed

that on the evening he met his death Alva Wisdom volunteered to help. At the time that he volunteered, the record also discloses that no request was made by Alva Wisdom for remuneration from the City of Seward, nor did Chief Heffner discuss with Alva Wisdom the question of compensation.[12]

In light of this evidence concerning Alva Wisdom's volunteering to help during the earthquake emergency, we hold that appellee Mrs. Mabel Wisdom has not established that Alva Wisdom was an employee of the City of Seward, either by virtue of an express or an implied contract of hire or employment, at the time of his death.[13]

---

defined in paragraph (12)." This later subsection defines an "employer" as "the state or its political subdivision or a person employing one or more persons in connection with a business or industry coming within the scope of this chapter and carried on in this state * * *."

10. Appellee Mrs. Mabel Wisdom had the burden of proving that her deceased husband was an employee of the city at the time he met his death. Wilhelm v. Industrial Comm'n, supra note 9; Fowler v. Hamilton Moving & Storage Co., 324 Mich. 614, 37 N.W.2d 649, 653 (1949); Herman v. Kandrat Coal Co., 205 Pa. Super. 117, 208 A.2d 51, 54 (1965); Scholz v. Industrial Comm'n, 267 Wis. 31, 64 N.W.2d 204, 209, 65 N.W.2d 1 (1954). In regard to the reasons for the requirement that the services be performed under a contract of hire, either express or implied, see 1 Larson, Workmen's Compensation § 47.10, at 687–689 (1965).

11. The facts are not in dispute. Whether the question of Alva Wisdom's employment under our compensation act is viewed as a question of law (McManus v. Kuhn, 194 Pa.Super. 544, 168 A.2d 618, 619 (1961)); or a mixed question of law and fact (Guarantee Ins. Co. v. Industrial Acc. Comm'n, 137 Cal.App.2d 691, 290 P. 2d 920, 924 (1955)); or a question of fact (Butts v. State Industrial Acc. Comm'n, 193 Or. 417, 239 P.2d 238, 243 (1951)), we still reach the same conclusion that the Board erred in determining that Alva Wisdom was an employee of the City of Seward.

12. On cross-examination, Chief Heffner testified as follows:
Q. * * * did anyone make any request to you for pay or ask you wheth-

er or not they would be paid for the work?
A. No, sir.
Q. Did Mr. Wisdom make any such request of you?
A. No sir.

13. Note in Crepps v. Industrial Comm'n, 402 Ill. 606, 85 N.E.2d 5, 9 (1949), the court said:
* * * it is impossible to lay down a rule by which the status of a person performing a service for another can be definitely fixed as an employee. * * * Ordinarily no single feature of the relation is determinative but all must be considered together and each case must depend upon its own facts.
Similarly, in Mount v. City of Redwood Falls, 260 Minn. 16, 108 N.W.2d 443, 445–446 (1961), the court stated:
Each controversy involving the status of an injured workman must be decided on its peculiar facts, and ordinarily no one feature of the relationship between him and his employer is determinative.
See also Village of Creve Coeur v. Industrial Comm'n, 32 Ill.2d 430, 206 N.E. 2d 706, 708 (1965). (No single factor is controlling.) Jones v. Dodge City, 194 Kan. 777, 402 P.2d 108, 111 (1965). (Emphasis on degree of control.) D'Amico v. Conguista, 24 Wash.2d 674, 167 P.2d 157, 160 (1946). (Common law rules applicable in determining whether relationship exists with emphasis placed on degree of control.)
We are of the opinion that each case must be decided on its own facts and that it would be inappropriate to attempt to articulate a general rule.
For a general discussion as to the preclusion of volunteers from coverage under compensation acts, see 1 Larson,

In reaching this conclusion, we reject appellees' contention that the facts adduced bring Alva Wisdom's death within those authorities which have permitted recovery under compensation statutes where impressment into public service was shown.[14]

As to the doctrine of emergency services and impressment cases in general, Professor Larson writes:

It is well established that a person who is asked for help in an emergency which threatens the employer's interests becomes an employee under an implied contract of hire. The most familiar example is that of the farmer or bystander who is called upon by an employed trucker to help get the truck out of the mire in which it is stuck. In such a case it is possible to say that the employee, although ordinarily without power to make contracts binding his employer, has implied authority to employ an assistant, since the employer must be presumed to intend that necessary measures be taken to set the employer's business again in motion. * * *

This emergency doctrine has also been carried over into the class of cases in which a person is pressed into public service, as where a man attending a dance was called upon by an inspector having the powers of a deputy sheriff to assist in quelling a disturbance. Wisconsin has even held a member of a posse, injured in pursuit of a fugitive, to be an employee of the county. * * * [15]

The facts of this case simply do not come within the ambit of the emergency-impress-

ment type of case. As emphasized earlier, Alva Wisdom volunteered his services to Chief Heffner. The essential element of an involuntary, compulsive impressment is not present here. On the contrary, the record shows that the City of Seward had not enacted any ordinance requiring assistance from its citizens in times of emergency. Nor was Chief Heffner, under the city's ordinances, possessed of authority to compel assistance or given the authority to hire anyone for emergency work. Thus the emergency-impressment cases relied on by appellees are distinguishable in that in the case at bar Chief Heffner lacked legal authorization to impress or compel assistance and concurrently there was an absence of any legal duty on Alva Wisdom's part to render assistance to the City of Seward. In all of the emergency-impressment cases relied upon by appellees the governmental authorities involved possessed statutory authority to impress citizens into public service. In Edwards v. Hollywood Canteen,[16] the court stated:

It is clear, however, that a citizen compelled by a sheriff to act as a deputy is not a 'volunteer,' since the law imposes a duty to serve. The difference between compulsory service in public emergency (giving rise to a legal relationship of employment), and purely volunteer service, has been recognized in other jurisdictions * * *.

Nor are we of the opinion that the evidence adduced brings Alva Wisdom within the sphere of the nonimpressment-emergency doctrine authorities relied upon by appellees and alluded to by Professor Lar-

Workmen's Compensation § 47.41(a), at 696–697 (1965). For other authorities holding that claimant must prove that a contract of employment existed before coverage under the compensation acts is applicable, see Hall v. State Compensation Ins. Fund, 154 Colo. 147, 387 P. 2d 899, 901 (1963); Howard v. Early Chevrolet-Pontiac-Cadillac, Inc., 150 So. 2d 309, 313 (Ct.App.La.1963); Harris v. Sun Indem. Co., 28 So.2d 403 (Ct.App. La.1946); Smith v. State Industrial Acc.

Comm'n, 144 Or. 480, 23 P.2d 904, aff'd 25 P.2d 1119 (1933).

14. Appellees rely on the impressment cases cited note 6 supra. All of these cases involved private citizens who were impressed into service to aid law enforcement officials in the carrying out of their duties.

15. 1 Larson, Workmen's Compensation § 47.42(c), at 699–701 (1965).

16. 27 Cal.2d 802, 167 P.2d 729, 731 (1946).

**938**

son.[17] It is pertinent to note that the record is devoid of any demand or request by the Chief of Police to Alva Wisdom to render assistance in the emergency. It is significant that Alva Wisdom volunteered to help without any request for, or having received any assurance of, remuneration for his services. These factors strongly militate against finding an implied contract of employment under the circumstances of the record. We therefore are of the view that the emergency doctrine cases relied upon are not pertinent.

The conclusions we have reached as to appellees' contentions in relation to their reliance upon emergency doctrine and emergency-impressment authorities are, to a large extent, dispositive of appellees' assertion that the provisions of our Civil Defense Act bring Alva Wisdom's death within the sphere of the Alaska Workmen's Compensation Act.[18]

On the day of the earthquake Seward had a complete and existing civil defense organization. It is undisputed that at no time pertinent to this appeal was martial law in effect in Seward. Due to the fact that the city manager was absent from Seward on March 27, the next highest ranking civil defense officer in the area was Chief of Police Lloyd Heffner. At that time Chief Heffner held the position of Civil Defense Deputy Director of Police.

Assuming that our Civil Defense Act was intended to apply to disaster situations other than those resulting from military at-tacks, we are of the opinion that nothing in the provisions of this act impels the conclusion that Wisdom was an employee of the City of Seward.[19] As has been pointed out before, the evidence adduced at the hearings before the Board (note: Chief Heffner's testimony is the only evidence on this point) shows that Alva Wisdom volunteered his services. The record is not only devoid of any request by Alva Wisdom for remuneration, but no reference at all to this subject on the evening in question can be found. Further, no provisions of our Civil Defense Act authorizes or empowers any civil defense official to impress citizens into civil defense work or activities. Contrary to emergency or emergency-impressment lines of authorities relied upon by appellees, this case represents an instance of completely voluntary as opposed to involuntary rendering of assistance.[20]

Reference is appropriate to one additional contention of appellees. In order to establish an employee-employer relationship, appellees rely in part upon the fact that subsequent to the March 27, 1964, earthquake "payments" were made to relief workers in the City of Seward. The record shows that these payments were made available in the following manner: Under Public Law 875, 64 Stat. 1109 the sum of $100,000.00 in disaster relief funds were allocated to the City of Seward. These funds were then made available through the Office of Economic Planning through H & K contractors who had been employed by the

17. In regard to the emergency doctrine authorities, appellees rely upon Ranson-Rooney v. Overseas Ry., 17 La.App. 205, 134 So. 765, rev'd, 173 La. 183, 136 So. 486 (1931); State ex rel. Neinaber v. District Court, 138 Minn. 416, 165 N.W. 268, L.R.A.1918F, 200 (1917); Cherry v. Industrial Comm'n, supra note 3; Conveyors' Corp. of America v. Industrial Comm'n, supra note 3. Compare Drexler v. Labay, 155 Ohio St. 244, 98 N.E.2d 410 (1951).

18. Note 7 supra where the applicable provisions of our civil defense laws are set forth.

19. Note: Appellants persuasively argue that the Civil Defense Act is restricted only to disasters resulting from military attack. See the text of AS 26.20.010 (a) set forth in note 7, supra, as well as AS 26.20.040, AS 26.20.060, AS 26.20.060(b) (1), (3); and AS 26.20.200(1), all of which bolster appellants' analysis as to the reach of the Civil Defense Act.

20. Note: Assuming that the Civil Defense Act was applicable and created an employer-employee relationship, a reading of the whole act could well result in the conclusion that Alva Wisdom's employer would be the State of Alaska and not the City of Seward.

United States Corps of Engineers to repair earthquake damage in the Seward area. H & K contractors had no contract with the City of Seward. The City of Seward merely acted as a disbursing agent for H & K contractors of the funds which the Office of Economic Planning had made available.

The evidence further discloses that Webber E. Dunham, then manager of the Seward office of the Alaska State Employment Service, determined that these funds should be used to pay those helping in the cleanup of the city. At a meeting held on April 1, 1964, between Dunham, the City Manager of Seward, and Chief Heffner, a $3.00 per hour flat rate of pay was established.

A review of the entire record convinces this court that these "payments" were actually emergency funds which were injected into the shattered economy of Seward as a temporary relief measure. The disbursement by H & K contractors, through the City of Seward's facilities, of some $97,000.00 to approximately 550 individuals does not lend any support to appellees' argument that these "payments" establish that an employment relationship existed between Alva Wisdom and the City of Seward. The disbursement of these funds bore no correlation to the type of work an individual had performed. Everyone was paid at the flat rate of $3.00 per hour regardless of the nature of the services rendered. Of greater significance is the fact that these "payments" were totally unrelated to any contracts involving the City of Seward. The City of Seward's role was limited primarily to that of assisting H & K contractors in the disbursing of these relief funds.[21]

Alva Wisdom heroically and unselfishly gave up his life while assisting his fellow citizens of Seward in an emergency. Despite the compulsion which arises from the circumstances surrounding his death, it is not our function to rewrite Alaska's compensation laws for this is the legislature's province. Our duty in a case such as that before us is to determine whether, upon the facts adduced in the record, Alva Wisdom was an employee within the scope of the Alaska Workmen's Compensation Act.

As pointed out previously, we are of the opinion the legislature intended that the act's coverage extend only to persons occupying the status of an employee under either an express or implied contract of hire. Implicit in our resolution of this question is our conclusion that the act was not intended to cover the concrete factual situation presented by this case. To conclude that all persons who voluntarily rendered help and assistance to the community of Seward on the evening in question were employees of the City of Seward would amount to an unwarranted construction and extension on our part of the scope of Alaska's Workmen's Compensation Act.

We are of the opinion that in an emergency of this magnitude, which in turn involved large numbers of Seward's citizens, it was not the intent of the legislature that all volunteers were to be considered employees for purposes of the act. Whether or not our compensation act is to have such an expansive reach is, in our opinion, a judgment which appropriately rests with the legislature. Not only in this broad question deserving of consideration by the legislature but the instant case warrants the legislature's consideration of affording special relief to Alva Wisdom's widow.

In light of the foregoing, we conclude that the superior court's order affirming the Alaska Workmen's Compensation Board's award in this case should be reversed, and the matter remanded to the superior court with directions to remand the matter to the Board to vacate its award.

21. In view of our disposition of the issues heretofore mentioned, we considered it unnecessary to decide appellants' further contentions that "casual employment" is not covered by our act and that Alva Wisdom's death did not arise out of his employment.