150 So.2d 309 (1963)
James C. HOWARD, Plaintiff-Appellee,
v.
EARLY CHEVROLET-PONTIAC-CADILLAC, INC., et al., Defendants-Appellants.
No. 9883.
Court of Appeal of Louisiana, Second Circuit.
February 7, 1963.
*310 Davenport, Farr & Kelly, Monroe, for Early Chevrolet-Pontiac-Cadillac, Inc., American Hdw. Mut. Ins. Co., and American Hdwe. Mut. Ins. Co.
Waltman & Napper, Ruston, for Early Chev.-Pontiac-Cadillac, Inc., in third-party petition.
Barham, Wright & Barham, Ruston, for James C. Howard.
Theus, Grisham, Davis, Leigh & Brown, Monroe, for Aetna Cas. & Surety Co.
Before HARDY, GLADNEY and AYRES, JJ.
GLADNEY, Judge.
Plaintiff's suit seeks recovery of damages ex delicto, and, in the alternative, workmen's compensation, as a result of injuries received in a fall sustained August 27, 1957, on the premises of an automobile agency in Ruston, Louisiana. Made defendants are Early Chevrolet-Pontiac-Cadillac, Inc., American Hardware Mutual Insurance Company, and Aetna Casualty & Surety Company. These defendants are hereinafter identified as Early, American and Aetna. American and Aetna are insurers respectively for Early as to liability and workmen's compensation.
In the judgment rendered on April 10, 1962, Howard was awarded damages of $26,968.78 against American and denied his claim for workmen's compensation against Aetna. The decree also rejected the demand of American against Early interposed in a third party petition. Orders of devolutive and suspensive appeal were perfected on behalf of Early and American. The plaintiff has answered the appeal, asking for an increase in the award in his favor.
The business of Early was entirely owned by Mrs. Howard, the wife of plaintiff, who is professionally known as Mrs. Early, her married name prior to her marriage with plaintiff. She is the corporation's president and active in its management. She also owns a farm and dairy located several miles from Ruston that is operated by her husband.
On the morning of August 27, 1957, Howard, accompanied by an employee of the dairy, Robert M. Bingaman, went to the office of the Early corporation for a social visit. While there Mrs. Early requested her husband to remove several 2 × 4's from the roof of a small frame building immediately behind the office for the purpose of constructing some parts bins which were needed. At that time a portion of the covering of the roof of the building had been removed in furtherance of a plan of Mrs. Early to demolish this structure which was of sound construction. It contained a concrete floor and a ceiling built of shiplap lumber nailed to the joists from below. The ceiling was approximately eleven or twelve feet from the floor.
In compliance with his wife's request, plaintiff obtained tools belonging to the corporation, entered the building and climbed into the attic through an opening in the ceiling. He had succeeded in detaching several 2 × 4's and was prizing with a crowbar when he suddenly fell through the ceiling to the concrete floor below, sustaining the injuries of which he complains.
Previously a lessee, M. S. Carroll Company, Inc., installed attic fans in this same *311 building. When Mrs. Early purchased the property on July 26, 1956, she knew the attic fans belonged to the lessee. When the lessee was preparing to vacate the building several months later, it informed Mrs. Early the attic fans would be removed and that the holes created by their removal would be covered. On numerous occasions Mrs. Early visited the building and noticed that the openings where the fans had been, were covered, although she testified she did not know the type of material used to cover the holes. When Mrs. Early asked her husband to remove the 2 × 4's, she failed to warn him of the fact that the ceiling had been altered. Actually, it appears that the openings were covered over with a fibrous material, either celotex or something similar.
Howard gave the following account of his activity in the building: that he could see quite clearly; that he observed with care the entire ceiling which appeared to be safe, but it was covered with dust and dirt and he was unable to recognize or detect any variation in the floor; and that he had walked across some twenty feet of the floor before it suddenly gave way beneath him and he fell feet first on the concrete floor. The opening through which plaintiff fell was approximately three feet square.
Following plaintiff's accident notice was not given to the insurer until August 23, 1958, almost one year later. Shortly after the accident demolition of the building in which plaintiff sustained his injuries was completed. It was in the process of demolition at the time of the accident. Howard testified the thought never occurred to him that he had a claim for damages and that it was the first time he had ever performed any service on the business premises for his wife. He regarded his act simply as one of accommodation. Mrs. Early testified that because of the unusual circumstances it had never occurred to her that the policy covered the accident sustained by her husband, and that she first discovered the possibility of a claim on August 23, 1958, when she was discussing general insurance matters with R. B. Sims, an insurance agent, and that he informed her plaintiff might be covered under one of the policies which she carried. The statement of Mrs. Early was corroborated by Sims. The liability policy issued by American to Early contained the following clause, listed as a condition to coverage:
"When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."
The issue first presented is whether the delayed notice of the occurrence of the accident has affected the rights of the injured party and should the court deny that it has, then the question arises as to whether American is entitled to obtain a judgment against Early for reimbursement of any amount it is forced to pay Howard. American has asserted this defense against Howard through its exception of no cause and no right of action, and has also raised by third party petition virtually the same legal question against its assured, Early. American contends that Early breached the terms of the quoted provisions of the insurance contract, due to its failure to notify American until eleven months and twenty-six days after the accident. It argues it was prejudiced by this dilatory conduct for when it received the notice of the claim, the building in which the accident occurred had been demolished. Thus, it asserts it was prevented from viewing the building, taking photographs and securing other data by which it may have avoided liability. The trial judge resolved both facets of the question of delayed notice against American.
Under the ruling of West et ux. v. Monroe Bakery, Inc. et al., 217 La. 189, 46 So. 2d 122 (1950) the issue raised by American against Howard is plainly answered. The *312 decision held that by the public policy of the state, as expressed in Act 55 of 1930, where an injured third person is not at fault, he does not lose his right or cause of action regardless of a stipulation to the contrary between the insurer and the insured in the policy contract with reference to delayed notice of the accident. The Supreme Court's opinion, written by Justice Moise, reviewed at length the jurisprudence of this state and the decision has been repeatedly followed. Nonetheless, there were dissents by Justices Hawthorne, McCaleb and LeBlanc, who reasoned that the majority opinion had failed to take into consideration that under Act 55 of 1930, the act specifically restricted the right of the injured party and made it subject to all lawful conditions of the policy contract and to the defenses which could be urged by the insurer in a direct action brought by the insured. The decision in West v. Monroe Bakery, Inc. effectively disposes of an exception of no cause or right of action as filed by American.
As between the insurer and insured where a breach of the policy is urged because of the delayed notice provisions, the decision in West v. Monroe Bakery, Inc. is not directly controlling. However, we believe that the criteria affecting the question of liability arising from delayed notice to the insurer should be as stated in Jackson et ux. v. State Farm Mutual Automobile Insurance Company, 211 La. 19, 29 So. 2d 177, 179 (1946). Although the court there was concerned with the defense urged against a third party in a tort action, it made the following pronouncement which we think should have our consideration in determining the problems at hand in the instant case:
"Each case involving delayed notices must stand upon its own facts and circumstances. The Court may consider in balancing the equities, not only the time intervening between the accident and the date of notice to the insured, and whether or not the claim is a direct one by the injured persons, under Act 55 of 1930, but also when the parties first discovered that substantial injury had been done or that a claim would be made; the time when the injured party discovered that insurance existed and knew the identity of the insurer; what prejudice to the insurance company's defense has been caused by the delay; the good faith of the insured and injured party; and the existence of any special circumstances, especially those indicating fraud or collusion."
A fair inference from the record is that plaintiff and his wife had no thought after the accident that Early's liability policy carried by American would cover such an unusual accident as the one in which Howard was injured. They had no intent nor reason for withholding notice from the insurer and it was by accident that on August 23, 1958, just before the expiration of the one year prescriptive period, that in talking to an insurance agent, Mrs. Early discovered the possibility that the policy might afford relief. Mrs. Early immediately conveyed this information to the assurer and to the plaintiff, who employed counsel, made his demand, and then filed this suit. The facts as developed in the record impressively reveal that there was no concealment on the part of the insured and in our judgment and that of the trial court, the parties were in the utmost good faith and failed to notify the defendant only because both were under the impression there was no liability. We, therefore, conclude as did the trial judge, that American's demand against Early must be denied.
Another question presented for resolution is whether the record establishes liability on the part of Early and its insurer, American, who deny that there has been a breach of duty to Howard. It is not seriously contended that Howard was other than an invitee. When he received his injuries he was engaged in an activity for the benefit of Early and at the express invitation of its owner and president. A decision *313 by this court, Mercer v. Tremont & G. Ry. Company, La.App., 19 So.2d 270, 275 (2d Cir. 1944) defines "invitee" as follows:
"An invitee, by definition, is considered to be one who enters upon the premises of another in answer to a direct or implied invitation. * * * It is thus apparent that the purpose of the entry is an important feature in defining and establishing the class in which a given individual should be placed. In determining the purpose of the visitor, with regard to his classification (as an invitee), it is well-established that such purpose must be one concerning a matter of mutual interest, the performance of some duty, a proceeding in the usual course of business, or a matter which will benefit the owner or occupant of the premises. 38 Am. Juris., Sec. 99, page 759."
The duty owed an invitee includes the use of reasonable care and the discovery of reasonably foreseeable conditions which may be dangerous and result in injury, especially where there is time for the correction of the condition or the giving of warning to the invitee of the danger. Ellington v. Walgreen Louisiana Company, La.App., 38 So.2d 177 (2d Cir. 1949); Alexander v. General Accident Fire & Life Assurance Corporation, La.App., 98 So.2d 730 (1st Cir. 1957); Mahfouz v. United Brotherhood of Carpenters, etc., La.App., 117 So. 2d 295 (2d Cir. 1959); and Dyer v. Stephens Buick Company, La.App., 125 So.2d 185 (4th Cir. 1960).
The record clearly shows that Mrs. Early had actual and constructive knowledge that an attic fan had been removed from the ceiling of the building, to which she directed Howard. She also knew or should have known that Howard, in order to remove the 2 × 4's, would have to stand upon the top side of the ceiling, and, therefore, she should have realized that after the removal of the attic fan there would remain a dangerous condition unless perchance the opening had been closed by use of strong materials. That it was covered over simply by fibrous material which would not bear the weight of an adult, was a fact which she should have discovered forasmuch as she testified she had been in that part of the structure where the attic fan had been removed. Her only excuse was that she just did not think to warn her husband of the possible dangerous condition. Accordingly, we are convinced, as was the district judge, that the facts and circumstances render Early and its liability insurer for the damages in this case.
A further defense tendered on behalf of American is that the plaintiff was contributorily negligent in his failure to see and observe evidence of a dangerous condition in the ceiling floor upon which he placed his weight. The burden of providing this defense rests upon its pleader and we find no evidence to back up this allegation. The uncontradicted testimony of Howard is that the entire ceiling as observed by him appeared to be of the same construction and that he had no reason to assume that the ceiling floor was unsafe. He also stated he made cautious observation for his own protection. The plea of contributory negligence is without merit.
There arises for review the question as to whether Howard is entitled to recover workmen's compensation. The trial court held plaintiff was not an employee and that the Workmen's Compensation Law of this State had no application to the present case. Plaintiff's suit against Aetna Casualty & Surety Company was therefore dismissed. On this appeal counsel for American urges the trial court erred in holding plaintiff was not an employee of the Early corporation. The contention is untenable under the facts of this case. His undertaking was entirely gratuitous and certainly no service was due by plaintiff to his wife under any employment agreement.
In Caldwell v. Caldwell, La.App., 55 So. 2d 258, 263 (2d Cir. 1951), this court stated:
"The Workmen's Compensation Law, LSA-R.S. 23:1021, et seq., applies only *314 to persons `performing services arising out of and incidental to his employment', etc. Employment means, of course, an engagement or contract to perform or render some sort of service to the one to whom such service is due."
The trial court found plaintiff's services were rendered as a mere accommodation to his wife and we agree with that conclusion. The court's determination that the Workmen's Compensation Law of this State is inapplicable to the present case is therefore correct. See Alexander v. J. E. Hixson & Sons Funeral Home, La.App., 44 So.2d 487 (1st Cir. 1950).
Immediately after the accident on August 27, 1957, Howard was treated by Dr. Gene Caldwell, assisted by his partner, Dr. Ray E. King, both specialists in orthopedic surgery. Dr. Caldwell subsequently died but plaintiff has continued under the treatment of Dr. King and was still under his treatment at the time of the trial on April 10, 1962. Dr. King was the only medical witness. Due to the manner in which he fell, Howard received crushing type fractures of the oscalcis (heel bone) of both feet. Surgical procedure has been required over the past four years on four occasions with a fifth operation still a possibility. Treatment of the patient has been continuous since the accident, and, according to Dr. King, Howard has suffered permanent disability in his left foot of thirty per cent and permanent disability of the right foot of twenty-five per cent. The doctor testified such foot injuries were accompanied with excruciating pain and was of the opinion that Howard would always have considerable pain, suffering and discomfort as a result of the injuries. Prior to trial hospital and doctor bills incurred had amounted to $1,968.78, and it appeared entirely probable that plaintiff would incur further medical expenses in the future to alleviate pain, which he will probably bear commensurate with his injuries for the remainder of his life. There can be no doubt that plaintiff will always be substantially handicapped in his physical activities and in carrying on with his avocation. Howard has spent much of this time, more than four years, in a hospital, bed or wheel chair. The trial court reached the conclusion that he should be awarded damages for disability and for pain, suffering and discomfort, and for future medical expenses in the sum of Twenty-Five Thousand ($25,000.00) Dollars. The total award by the trial court was Twenty-Six Thousand, Nine Hundred Sixty-Eight and 78/100 ($26,968.78) Dollars, which included medical expenses.
Counsel for American Hardware Mutual Insurance Company assert that the award of Twenty-Five Thousand ($25,000.00) Dollars is excessive and should be reduced to Fifteen Thousand ($15,000.00) Dollars, whereas plaintiff, by answer to the appeal, declares the judgment is inadequate and should be increased to Forty-Three Thousand, Nine Hundred Sixty-Eight and 78/100 ($43,968.78) Dollars. After due reflection, we find the award by the trial court to be neither excessive nor inadequate.
The judgment is affirmed.