308 So.2d 326 (1975)
J. C. BARNES and Mrs. J. C. Barnes
v.
LUMBERMEN'S MUTUAL CASUALTY CO.
No. 10144.
Court of Appeal of Louisiana, First Circuit.
February 10, 1975.
Rehearing Denied March 10, 1975.
*327 Bradford R. Roberts, II, New Orleans, for appellant.
John W. Anthony, Bogalusa, for appellees.
Before LOTTINGER and COVINGTON, JJ., and BAILES, J. Pro Tem.
JULIAN E. BAILES, Judge Pro Tem.
Plaintiffs brought this action against defendant to recover for the wrongful death of their son under the uninsured motorist provisions of their automobile public liability insurance policy. The district court awarded judgment in favor of plaintiffs in the amount of $5,000, the maximum due under the applicable feature of the policy. Defendant has appealed. We affirm.
The following was stipulated between the parties at the trial.
"It is stipulated by and between counsel for the plaintiffs and the defendant that Calvin Wesley Barnes, the minor son of Mr. and Mrs. J. C. Barnes who was residing with them was in an automobile accident on November 15, 1969, while riding as a passenger in an automobile driven by J. C. Turner in the City of Bogalusa, Louisiana. Approximately seven days after the accident Calvin Wesley Barnes died as a result of the injuries sustained in the said automobile accident. It is further stipulated that the said J. C. Turner was uninsured and that the accident was caused by his negligence. It is further stipulated that Lumbermens Mutual Casualty Company issued a policy of insurance to Mr. and Mrs. J. C. Barnes containing uninsured motorist coverage with limitations of liability of $5,000 per person. The sole question at issue in this case is whether or not Mr. and Mrs. Barnes gave sufficient notice to the defendant as required under their policy. It is the contention of Mr. and Mrs. Barnes that they did give notice on or about December 17, 1969, whereas it is the contention of the defendant that no notice was received until August 8, 1972."
On the issue of notice, both plaintiffs testified and also the insurance agent, Mr. Gaulden L. Smith, Jr., of Hattiesburg, Mississippi. The essence of plaintiffs' testimony is that they went to Mr. Smith's office on December 17, 1969, advised Mr. Smith that their son had been injured in an automobile accident in Bogalusa, Louisiana, on November 15, 1969, and that he had died as a result of these injuries seven days later, and that they wanted to have their son's vehicle included in their insurance policy. The plaintiffs further testified that they were unaware at that time that they had a claim under their insurance policy for either the wrongful death of their son or for any medical payment; that it was not until August, 1972, after a discussion with a friend, that they became aware of the existence of any claim under their policy. Mr. Smith testified that the plaintiffs stated they had lost their son and wished to have his automobile covered under their policy. He denied that the plaintiffs had advised him that their son had died of injuries received in an automobile accident. On August 7, 1972, Mr. Smith received a telephone call from Mrs. Smith advising him that her son had died of injuries received in an automobile in Bogalusa, Louisiana, on November 15, 1969. As a result of this notice, Mr. Smith notified defendant which made the medical payment of $1,000 due under the policy. Payment under the uninsured motorist provision was refused.
*328 In his reasons for judgment, the trial judge stated, inter alia:
"It is inconceivable to the court that Mr. Smith did not make inquiries about the death of Mr. and Mrs. Barnes son, when they advised him that he had died. Mr. Smith admitted that he gave his condolences to Mr. and Mrs. Barnes, and that he issued an endorsement changing their insurance from their automobile to their son's automobile. In the normal course in changing this endorsement this information almost of a certainty was discussed by Mr. and Mrs. Barnes and Mr. Smith. As an agent for the insurance company, Mr. Smith had considerable more knowledge of the provisions of their insurance policy and the court feels he had a duty to advise Mr. and Mrs. Barnes of the provisions of their policy. Even if the uninsured motorist provisions of a policy did not come into play, the company owed to Mr. and Mrs. Barnes the medical payment provision, which they subsequently paid without a question. Even if Mr. Smith did not properly notify the insurance company, it cannot be held against Mr. and Mrs. Barnes."
We find plaintiffs have not sustained the burden of proving that notice was given to Mr. Smith that their son died as the result of injuries received in an automobile accident. In the face of their ignorance that they possessed a claim under the uninsured motorist and the medical payment provisions of their insurance policy there was no compelling reason for them to notify or tell their insurance agent that their son had died of injuries received in an automobile accident. Mr. Smith affirmatively denies that plaintiffs so advised him, and further states that he did not inquire of how their son met his death because of the evident emotions of Mrs. Smith.
Although we find plaintiffs did not notify defendant of the loss under the policy, at the meeting with Mr. Smith as above related, defendant cannot escape liability for the claim asserted in this action unless it has been prejudiced either in fact or as a matter of law by the delay in notice.
In Article VII of its answer, defendant stated: "* * * Further answering, it is specifically averred that plaintiffs' failure to give notice of the accident to defendant violated the terms of the contract of insurance to the prejudice of defendant and precludes plaintiffs' recovery."
In its brief, defendant includes this argument:
"Lumbermens suggest that the trial judge erred in not finding that the notice given almost two years after the accident actually prejudiced the insurer. After that period of time Lumbermens was not able to trace the witnesses to the accident, could not take the statement of their insured's son who had died as a result of the accident, could not find the uninsured motorist for subrogation purposes and could not investigate the automobile, the scene, the traffic signals or the road conditions in a meaningful way. * * * Lumbermens has been clearly prejudiced in its role as insurer and the trial judge erred in holding to the contrary."
We cannot consider this argument of defendant for the reason that the facts on which this argument is based are dehors the record.
As no factual allegations of prejudice are made and no proof of prejudice was offered under this conclusionary allegation of defendant's answer, we are restricted to a determination of the issue of prejudice as a matter of law.
In this respect it is argued that inasmuch as the accident occurred on November 15, 1969, and notice was given to defendant on August 7, 1972, more than a year after the date of the accident, defendant's claim against the negligent host driver has prescribed. We cannot hold at this time that as a matter of law the negligent uninsured host driver would have interposed the exception of one year prescription, *329 nor for that matter would have answered a suit filed by defendant.
The notice provision of the insurance policy under which this action is brought provides:
"* * *
"3. Notice. In the event of an accident * * * written notice containing particulars * * * shall be given by or for the insured to the company or any of its authorized agent as soon as practicable."
In Jones v. Shehee-Ford Wagon & Harness Co., Inc. et al., 183 La. 293, 163 So. 129, the insured delayed giving notice of an accident, liability for which was covered by the policy issued to the named defendant, from June 12 (the date of the accident) until July 16. In passing on the defendant insurance company's exception of no cause or right of action based on breach of the notice provision of the insurance policy, the court stated:
"Under policy contracts similar to the one before us, the law does not require the insured to give notice to the insurance company of an accident unless the insured has reason to believe that the accident has caused or will cause loss covered by the policy. See Blashfield's Cyclopedia of Automobile Law, Vol. 3, p. 2663, and the decisions cited. * * *."
In Jackson v. State Farm Mutual Automobile Insurance Company, 211 La. 19, 29 So.2d 177, the court, in considering a notice delay of eight-two days, held there was no substantial prejudice to defendants. Therein the Supreme Court said, in commenting on the Jones case, supra:
"The above quoted decision recognizes the fact that the average citizen who purchases a public liability policy seldom, if ever, becomes familiar with its detailed provisions but simply puts it away against the day when a claim may be made against him."
Further, the court observed:
"[2] Each case involving delayed notices must stand upon its own facts and circumstances. The Court may consider in balancing equities, not only the time intervening between the accident and the date of notice to the insured, and whether or not the claim is a direct one by the insured party, under Act 55, of 1930, but also when the parties first discovered that substantial injury had been done or that a claim would be made; the time when the injured party discovered that insurance existed and knew the identity of the insurer; what prejudice to the insurance company's defense has been caused by the delay; the good faith of the insured and injured party; and the existence of any special circumstances, especially those indicating fraud or collusion."
Particularly impressive is the holding of the court in the case of Howard v. Early Chevrolet-Pontiac-Cadillac, Inc., 150 So.2d 309 (La.App. 2d Cir. 1963) wherein the court rejected the defense of lack of notice of almost one year after the accident. The court therein held:
"[1] A fair inference from the record is that plaintiff and his wife had no thought after the accident that Early's liability policy carried by American would cover such an unusual accident as the one in which Howard was injured. They had no intent nor reason for withholding notice from the insurer and it was by accident that on August 23, 1958, just before the expiration of the one year prescriptive period, that in talking to an insurance agent, Mrs. Early (plaintiff's wife) discovered the possibility that the policy might afford relief. * * *."
Also see Davis v. Allstate Insurance Company, 272 So.2d 458 (La.App. 2d Cir. 1973).
While in Miller v. Marcantel, 221 So.2d 557, on page 560 (La.App. 3rd Cir. 1969) *330 the court was confronted with a delayed notice of suit defense, it was noted:
"Louisiana's rulethat delayed notice of an accident does not forfeit coverage in the absence of prejudice to the insurer represents the minority American view. 7 Am.Jr.2d Automobile Insurance, Section 145; Annotation, 18 A.L.R.2d 443, 480 (Section 24). * * *.
* * * * * *
"The principle of interpretation followed in both instances (meaning both delayed of notice of accident and delayed notice of suit) is that policy clauses are interpreted in the light of their function and in view of the fundamental purpose of the insuring contract entered into between the parties: to effectuate the substantive coverage intended by the policy, rather than to defeat it by applying technically a clause designed merely to protect the insurer from prejudices, not to trap the insured."
From the record before us, we are convinced the plaintiffs were ignorant of any provision in their public liability policy which afforded them a right to assert a claim for damages for the wrongful death of their son, or that they had a claim for his medical and burial expenses to the extent of the policy limit of $1,000 which defendant promptly paid on notice. It was not until about August 7, 1972, after conversing with a friend about the insurance coverage that they became aware of a possible claim thereunder.
There is not the slightest hint of any fraud or collusion herein. We are unable to find under the facts of this case in its present posture and the stipulation of facts entered any prejudice to the defendant.
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed, at appellant's cost.
Affirmed.
LOTTINGER, Judge (dissenting):
I respectfully dissent from the majority herein.
It is important to bear in mind the fact that this accident occurred on November 15, 1969 and that no notice was received by the defendant, insurer, until August 8, 1972, more than two years and eight months after the accident.
It is further important to bear in mind that the uninsured motorist or tort feasor was not made a co-defendant in this suit which was filed March 12, 1973.
It is likewise important to note that the defendant, in its answer, pleaded "that plaintiff's failure to give notice of the accident to defendant violated the terms of the contract of insurance to the prejudice of defendant and precludes plaintiff's recovery".
According to condition No. 3 on page 15 of the policy it is provided that in the event of an accident or loss written notice containing all particulars shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.
In its reasons for judgment, the Lower Court found that Lumbermens did not suffer prejudice by receipt of notice more than two years after the accident. It further held that the prescriptive period would not commence against the insurer with respect to its subrogation claim against the uninsured motorist until the insurer had been forced to pay the insured.
One of the paramount purposes of the notice requirement of the insurance policy is to protect the subrogation rights of the insurer as to any claims paid the insured. Other purposes are to assure an early investigation of the accident while facts and memories of the witnesses are fresh. These are, of course, essential to a speedy trial.
I agree fully with the majority herein that the plaintiffs have not properly and timely notified defendant of the loss under the policy and that defendant cannot escape liability for the claim asserted in this action unless it has been prejudiced either *331 in fact or as a matter of law by the delay in notice. The majority contends there was no prejudice shown. I contend to the contrary that the record and the laws of the State of Louisiana shows prejudice. All the testimony in this record deals with the question of notice and accident. It is firmly established that the accident occurred on November 15, 1969; that a conversation took place on December 17, 1969 and that a claim and notice was made on defendant on August 8, 1972 and that this suit was filed on March 12, 1973.
In Booth v. Firemans Fund Insurance Co., 253 La. 521, 218 So.2d 580 (1968) the court was faced with a suit by petitioners against their own insurer under the uninsured motorist provision of their contract of liability insurance to recover damages resulting from a collision with an uninsured automobile more than two and one half years prior to the institution of suit. The court there held that although the suit by petitioners against the uninsured motorist was one ex delicto and, therefore, prescribed in one year under the provisions of Civil Code Article 3536, the suit by the petitioners against their liability insurer was one ex contractu and, therefore, prescribed in ten years under the provisions of Civil Code Article 3544.
The paramount difference between the Booth case and the present one is that of notice. No question of notice arose in Booth. However, in the present case the question of timely and proper notice is highly contested.
I feel that under the contract of insurance which is before us, the petitioners were required to give timely and written notice to their insurer. The conversation which they had with their agent on December 17, 1969, was not sufficient to meet the requirements of "written notice containing particulars to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances..." as are set forth in the contract of insurance, which contract, when clear and unambiguous, constitutes the law between the parties.
Plaintiffs contend that the case of Davis v. Allstate Insurance Co., 272 So.2d 458 (La.App.2d Cir. 1973) is indistinguishable from the case at bar. In that case the accident occurred on March 25, 1971. The suit was filed on March 14, 1972. A copy of the petition and citation was served on the Secretary of State of Louisiana on March 17, 1972. In that case the action was brought against the plaintiff's uninsured motorist carrier and the daughter's boy friend with whom plaintiff's minor daughter was riding as a guest passenger. Made defendants in that action were the boy friend against whom plaintiff seeked to recover in tort and Allstate against whom the plaintiff seeked to recover in contract under the uninsured motorist provisions of her own automobile policy issued by Allstate.
One of the main differences between that case and the case at bar is that in the cited case the tort feasor was made a party defendant and the suit was filed within one year of the accident whereas in the case at bar, the tort feasor was not made a party defendant and furthermore the defendant's agent Mr. Smith testified that he never received any written notice or any notice whatsoever about the accident which occurred in November of 1969 or the claim until the summer of 1972 and the suit was not filed until March 12, 1973. I am of the opinion that there is no similarity of the two cases.
The subrogation clause in the policy before us provides that in the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefore against any one and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights. See also R.S. 22:1406, subd. D(4). See also footnote No. 11 in Booth supra at the bottom of page 584 of 218 So.2d.
*332 Article 2160 of the Civil Code dealing with conventional subrogations provides as follows:
"Art. 2160. The subrogation is conventional:
1. When the creditor, receiving his payment from a third person, subrogates him in his rights, actions, privileges, and mortgages against the debtor; this subrogation must be expressed and made at the same time as the payment." ... (Emphasis mine)
It is apparent from the above that the payment must be made at the same time as the subrogation. This is likewise the rule with legal subrogation. It is likewise the established rule that the subrogee can not acquire any greater rights than that owned by the subrogor.
It must be remembered that when notice was made upon and received by defendant on August 8, 1972 that the cause of action plaintiffs had against the uninsured motorist or tort feasor had already prescribed as established in Booth supra. Therefore according to the established dates in the record and the law and jurisprudence cited above and the circumstances presented the matter speaks for itself and is self-evident that the insurer herein has actually been prejudiced by the insured's failure to give proper and timely notice. The mere fact that the cause of action against the tort feasor is prescribed is enough to show prejudice. If you are going to compell the insurer to pay the claim and then get a subrogation and then sue the tort feasor, if you can find him, under these circumstances just to find out if he will plead his one year prescription, that in itself is prejudice. Assuming he does plead prescription, which he has the right to do, do you think that the insurer defendant would then have a right to recover the amount it has paid the insured, even though and despite the fact that it has gone that far to prove prejudice.
It is for the above reasons I am of the opinion that the insurer herein has actually been prejudiced by the insured's failure to give proper and timely notice. See Davis v. Allstate, supra, as well as Booth v. Firemans Fund, supra.
The majority has cited four cases in the latter part of their opinion as controlling herein but if you will just take the necessary time to read and digest the facts of each case you will see that there is no similarity of the facts nor of the issues involved to the case at bar.
In the Jones v. Shehee-Ford Wagon & Harness Co., Inc. et al., 183 La. 293, 163 So. 129, the accident took place on June 16 and the report was made on July 12 of the same year.
In the Jackson v. State Farm Mutual Automobile Ins. Co., 211 La. 19, 29 So.2d 177, there was a delay of 82 days after the accident before the notice was given.
In the Howard v. Early Chevrolet-Pontiac-Cadillac, Inc., 150 So.2d 309 (La.App.), there the plaintiff filed suit for damages and in the alternative, Workmens Compensation, for injuries he received in a fall August 27, 1957 on the premises of an automobile agency in Ruston, La. Made defendants are Early Chevrolet-Pontiac-Cadillac, Inc., American Hardware Mutual Ins. Co. and Aetna Cas. & Sur. Co. American and Aetna are insurers respectively for Early as to liability and Workmens Compensation.
Howard was awarded $26,968.78 against American (Liability) and denied his claim for compensation against Aetna. The decree also rejected the demand of American against Early in a third party petition. Appeals were perfected on behalf of Early and American.
Notice was given the insurer on August 23, 1958, almost one year later.
Here the insured "Early" was the tort feasor. There were no third parties involved (other than the plaintiff). The insurer was not entitled to a subrogation from its insured for its own negligence. The insured had paid a premium for insurance *333 coverage of its own negligence to American, the insurer. Therefore American was not prejudiced by the late notice insofar as subrogation was concerned.
A different case altogether.
In the Miller v. Marcantel, 221 So.2d 557, (La.App.), Marcantel and Hebert, the defendants in the principal action, made Employers a third party defendant. They alleged that a liability policy issued by Employers provided coverage for the damages claimed against them in the principal action.
By motion for summary judgment, Employers contended that Marcantel and Hebert had forfeited coverage by breaching a policy condition which required immediate notice of suit filed. The trial court upheld this contention and Marcantel and Hebert appealed from the judgment dismissing their third party demand. Marcantel and Hebert did not furnish notice to Employers of the suit against them until 5 months after it was filed.
It is not disputed that within a few days after the accident the insurer Employers received notice of the accident from the local insurance agent which had issued the defendants the insurance policy here sued upon. Employers then made a full investigation of the accident.
Nevertheless, when the present suit was filed against the defendants, they did not furnish Employers notice of such suit, nor did they forward to it suit papers as required by the policy.
No prejudice alleged or shown, therefore reversed.
In the case at bar we have prejudice alleged and shown. A different case altogether.
I feel that by failure to give early and proper notice the petitioners violated the terms of their insurance contract and thereby forfeited their rights to recover thereunder.
For the above and foregoing reasons, I respectfully dissent from the majority.